UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-80107-CR-CANNON

UNITED STATES OF AMERICA,

vs.

SELWYN DAVID ROSENSTEIN,

Defendant.

_____/

## SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE FROM APPLICABLE ADVISORY SENTENCING GUIDELINE RANGE

The Defendant, Selwyn David Rosenstein, by and through the undersigned counsel, hereby offers the following Sentencing Memorandum and Request for Variance from the Applicable Advisory Sentencing Guideline Range. Sentencing is scheduled for December 9, 2022, at 9:00 A.M. This Memorandum is being filed pursuant to Rule 32 of the Federal Rules of Criminal Procedure.

## INTRODUCTION

On September 23, 2022, Selwyn David Rosenstein pled guilty to seven counts of an eight count Indictment. Count 2 charged Conspiracy to Advertise Child Pornography, Counts 3-7 charged Advertisement of Child Pornography, and Count 8 charged Possession of Child Pornography. There is also a forfeiture provision which the Defendant is not contesting.

## MEMORANDUM OF LAW

In Booker v. United States, 543 U.S. 220 (2005), the position of the Sentencing Reform Act that required sentencing courts to follow the guidelines was changed to an "advisory" regime; the guidelines should still be considered by the Courts, but **do not automatically**

**control the ultimate sentencing determination**.  As Justice Bryer observed, this discretionary
regime "requires a sentencing court to consider Guideline ranges, see §3553(a)(Supp. 2004), and
U.S. v. Booker, 125 S. Ct. 757.  The result was the Supreme Court authorizing sentences to fall
outside of the Advisory Guideline range, so long as such sentence was reasonable.  "[I]t has been
uniform and consistent in the federal judicial tradition for the sentencing judge to consider every
convicted person as an individual and every case as a unique study in human failings that
sometimes mitigate, sometimes magnify, the crime and punishment to ensue."  Koon v. U.S.,
518 U.S. 81, 113 (1996).

A key component of Supreme Court law, designed to ensure that the guidelines are truly
advisory and constitutional, is the authority of this Court to disagree with a guideline as a matter
of policy.  Because "the Guidelines are now advisory….as a general matter, courts may vary
[from Guidelines ranges] based solely on policy considerations, including disagreements with the
Guidelines."  Kimbrough, 552 U.S. at 101-02 (internal punctuation omitted) (citing Rita v.
United States, 551 U.S. 338, 351 (2007) (district courts may find that the "Guidelines sentence
itself fails properly to reflect §3553(a) considerations").  As the Supreme Court held in
Kimbrough, because "the cocaine Guidelines, like all other Guidelines, are advisory only," it
"would not be an abuse of discretion for a district court to conclude when sentencing a particular
defendant that the crack powder disparity yields a sentence 'greater than necessary' to achieve
§3553(a)'s purposes, even in a min-man case."  Kimbrough, 552 U.S. at 91, 109-10.

Congressionally directed guidelines are advisory.  In Vasquez v. United States, 130 S. Ct.
1135 (2010), the Supreme Court remanded for reconsideration in light of then-Solicitor General
Kagan's positon **that "all guidelines," including congressionally-directed guidelines, "are
advisory, and the very essence of an advisory guideline is that a sentencing court may,**

subject to appellate review for reasonableness, disagree with the guidelines in imposing

sentencing under Section 3553(a)." U.S. Br. at 11, Vasquez v. United States, No. 09-5370

(Nov. 2009). As the Sixth Circuit has previously recognized, "*all* of the sentencing guidelines

are advisory," including those directed by Congress. United States v. Michael, 576 F.3d 323,

327 (6th Cir. 2009) (emphasis in original). Congressional directives "tell the Sentencing

Commission, **not the courts**, what to do," and "a directive that the Commission specify a

particular Guidelines range is not a mandate that sentencing courts stay within it. Id. At 328.

The Defendant understands that he will receive a mandatory minimum sentence of fifteen years,

but he is hoping this Court will consider all the factors and still determine that a variance from

the advisory guideline score is appropriate.

       The undersigned, on behalf of the Defendant would ask this Court to consider those

factors enumerated pursuant to 18 U.S.C. §3553 in imposing an appropriate and fair

sentence in this case.

### 18 U.S.C. §3553(a)(1): THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT.

       The presentence investigation report in this case reviews the factual scenario which the

Defendant was involved with. This dealt with a website involving child pornography, how to

access it and how to get to different levels and subject matter within this group. The Defendant

clearly understands that a child is victimized each time someone views , receives or distributes

child pornography. Advertising where one can go to view child pornography is part of this as

well, and the Defendant deeply regrets his actions.

USA vs. Rosenstein, Selwyn David
Case No. 22-80107-CR-CANNON

On page 8 of the presentence investigation report, the probation officer quotes an undercover session which captured statements as contained in paragraph 18, Sections (9) – (f) of the presentence investigation report. These are not statements of the Defendant.

The Defendant was identified during the course of this investigation and was arrested following the execution of a search warrant at this home in Boynton Beach, Florida. Following his arrest, he was cooperative with law enforcement and advised them of his involvement. Additionally, on August 10, 2022, the Defendant met with the Assistant United States Attorney and Federal agents involved in this case and provided an additional voluntary statement in furtherance of anticipated cooperation.

The Defendant is a college graduate, earning degrees in computer science and accounting from the University of Cape Town in 1970, and ran a successful business his entire life. He has never been in trouble previously. He enjoys an amicable relationship with his ex-wife, with whom he was living at the time of his arrest. The Defendant was born and raised in Cape Town, South Africa. Both of his parents and one of his sisters are deceased. The Defendant assisted his mother financially until her death. He has been assisting his 77 year old sister and owns a condominium in Clearwater, Florida, where his sister lives. He has supported his sister financially and has continued, with the assistance of his ex-wife to pay all his sister's expenses related to that residence. He has also helped her financially when necessary. The Defendant has been quite observant in the Jewish faith for almost 30 years.

He relocated to Los Angeles, California, from approximately 1980 through 2021. He then moved to Boynton Beach, Florida.

4

USA vs. Rosenstein, Selwyn David
Case No.  22-80107-CR-CANNON

His ex-wife moved with him and as indicated above, they have remained close friends. Selwyn Rosenstein reports a vague recollection of having been molested as a child by his now deceased sister.  He family also had a maid whom he recalls "touched him" as a child.

He became a United States citizen in 2008.  Health wise, the Defendant has had issues with his back and periodic pain.  The presentence report, at page 22, discusses those matters in detail and reports the Defendant being diagnosed in 2001 with a compressed spinal cord, as well as the resulting medical issues which have occurred as a result.

## LETTERS OF REFERENCE

Attached and incorporated by reference hereto as Composite Exhibit A are letters of recommendation from individuals who know Selwyn Rosenstein and will attest to his character. They are from the following individuals:

1. **Rabbi Eli Hecht**.

2. **Ronald Wolff.**

3. **Kate Blignaut**.

4. **Avis Gorton**.

5. **Sandra Smith**.

6. **Rabbi Yosef Raichik.**

7. **Ralph G. Baecker.**

The following excerpts are from some of those people who have written on Selwyn Rosenstein's behalf:

**Rabbi Eli Hecht** of Lomita, California, on 7/13/22, writes:

"I am very saddened in acknowledging the recent news of his arrest and subsequent incarceration.  Selwyn has been a friend and a model member of our community in South Bay,

California.  I find it incredibly out of character that he be involved in criminal behavior.  For over thirty years that I have known him, I've seen only good and fine behavior."

**Ronald Wolff** who has known the Defendant since 1982, on 7/9/13 writes in part:

"In all the years I have known Selwyn he has showed only the highest integrity and moral character."

**Kate Blignaut,** the Defendant's former sister-in-law from Brookwater, Australia, on 11/12/22 writes in part:

"For over 42 years I have known and loved Selwyn Rosenstein as a close brother-in-law and an upstanding, caring and good human being.  Over the years Selwyn has been responsible and accountable in our lives, always taking good care and looking out for me and my sisters, simply an integral part of our family.  Never once have I (or my immediate family) ever had cause to doubt his sincerity, honesty and integrity."

**Avis Gorton**, the Defendant's sister, on 9/12/22 writes:

"Selwyn has provided accommodation for family when need and 5 years ago purchased a condo for me to live in.  He has supported me financially over the past 7 years for which I am very grateful."

### (2) THE NEED FOR SENTENCE IMPOSED

**(A) To reflect the seriousness of the offense to promote respect for the law and to provide just punishment for the offense.**

No one understands the seriousness of these offenses more than Selwyn Rosenstein.  He has been remorseful and has owned his actions.  What happened here was clearly an aberration from an otherwise law abiding life.  Punishment in this case, most respectfully, could be handed out to Selwyn Rosenstein with a period of incarceration below the advisory sentencing

guidelines computation and would be just as effective and meaningful, especially for an individual who has never been to prison and for someone who is 69 years old.

### (B)  To Afford Adequate Deterrence to Criminal Conduct.

To suggest that Selwyn Rosenstein has not been deterred or to punish at the advisory guideline level in order to encourage deterrence would ignore other factors in his life.  The undersigned would submit that this incident has more than adequately deterred Selwyn Rosenstein and there is no reason to believe he would ever again engage in any criminal conduct.

### (C)    To Protect the Public from Further Crimes of the Defendant

There is nothing within the Pre-Sentence Investigation Report or in Selwyn Rosenstein's background to suggest that the public needs to be protected from any further crimes.     Dr. Michael Brannon has also indicated from all testing that Selwyn Rosenstein is at low risk for reoffending.  He will be present at time of sentencing and will address his findings with the Court.

### (D)    To Provide the Defendant with Needed Educational or Vocational Training Medical Care or Other Correctional Treatment in the Most Effective Manner.

Selwyn Rosenstein is a college graduate who worked for others and then established his own successful business during his lifetime.  Through his life experiences, he has received educational and vocational training on many levels.  In prison it is his hope to be able to use his skills to educate and help others.

### (3) THE KINDS OF SENTENCE AND SENTENCING RANGE ESTABLISHED

In dealing with these two sections together and looking at the advisory guidelines, the undersigned would submit, most respectfully, that those factors consistent with 18 U.S.C. §3553

USA vs. Rosenstein, Selwyn David
Case No. 22-80107-CR-CANNON

(1) [Nature and Characteristics] should override the possibility of a straight guideline calculated advisory sentence.  Selwyn Rosenstein is seeking a downward variance from the applicable advisory guideline range.  What increases the guidelines in cases like this are the various enhancements that are essentially automatic.  A 15 year mandatory minimum sentence for a 69 year old individual as he is someone who has never been to prison before is extremely lengthy. Selwyn Rosenstein should not be punished additionally for the manner in which he engaged in the behavior which gave rise to his arrest.  In determining the appropriate sentence Selwyn Rosenstein is asking the Court to not only consider his acceptance of responsibility but also his age, education, employment history, family background and consider fashioning a sentence which punishes but at the same time recognizes those particular factors in Selwyn Rosenstein's life.  The Court has this discretion and could accomplish this.   He will be a convicted felon, as well as a registered sex offender.  At 69 years old, a 15 year minimum mandatory could well be a life sentence.  If he survives and is released from prison, he will be limited as to where he can live and who he can interact with.

### (4)  ANY PERTINENT POLICY STATEMENT

The undersigned and Selwyn Rosenstein are aware of law enforcement's commitment to protect those impacted by child pornography.  **It is respectfully requested that Selwyn Rosenstein should be treated differently than one who has pled guilty to a touch or contact offense.**  In making this request, it should be clear that Selwyn Rosenstein does not in any way undermine the seriousness of these offenses to those victimized by child pornography or his actions in this case.

USA vs. Rosenstein, Selwyn David
Case No.  22-80107-CR-CANNON

## (5)  THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS WHO HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT

There have been a variety of cases with similar subject matter where variances from the advisory guidelines have been granted.  The two cited below are examples:

In United States v. Timothy Beaver 6:13-CR-302-Orl., the Defendant was charged in the Middle District of Florida with Receipt of Child Pornography, which was punishable by 5-20 years.  Besides the base offense level, the Defendant received enhancements for prepubescent minor, material portraying sadistic or masochistic conduct, use of the computer and number of images.  The number of still images were 14,500, with an additional 352 videos computing to 40,900 images.  With all enhancements and a deduction for acceptance, the guideline range was 121-151 months.  The Defendant received a variant sentence of 78 months, plus supervision.  Although not charged with advertising or conspiracy, the conduct complained of, child pornography, is the same.

In United States v. Gary Lee Reed 6:12-CR-328-Orl., the defendant was charged with Distribution of Child Pornography.  He received all the enhancements, as did the defendant in Unites States v. Timothy Beaver, plus an additional enhancement for distribution of child pornography.  The total images (still and video) were 89,731.  His advisory guideline score was 151-188 months.  This defendant received a variant sentence of 96 months, plus supervision.

The undersigned points these out just to show that even with substantial enhancements, variances were appropriate due to particular circumstances.

USA vs. Rosenstein, Selwyn David
Case No. 22-80107-CR-CANNON

## (6) THE NEED TO PROVIDE RESTITUTION TO ANY VICTIMS OF THE OFFENSE

Selwyn Rosenstein understands there will be a special mandatory assessment imposed in this case, as well as the potential of identifiable restitution.

## REQUEST FOR PRISON RECOMMENDATION

Selwyn Rosenstein would ask this Court to recommend a prison facility where he could use his training to help others.   Selwyn Rosenstein would ask the Court to recommend one of two facilities: **FCI Englewood in Littleton, Colorado, in the north central region, or FCI Coleman, in Coleman, Florida.**

## EVALUATION:  DR. MICHAEL BRANNON

In October of 2022, at the request of the undersigned, Selwyn Rosenstein was evaluated by Dr. Michael Brannon.  Dr. Brannon has an expertise in evaluating the type of behavior which led to the offenses Selwyn Rosenstein was charged with.    His resume is incorporated and attached hereto as Exhibit B.

Dr. Brannon performed a number of psychological tests on this 69-year old patient.  This included the MMPI-3, the Beck Depression Inventory, Beck Anxiety Inventory, Beck Hopelessness Scales and a Reliable Digit Scan examination.  In addition, Dr. Brannon contacted the Defendant's ex-wife for verification purposes.   She did report that the Defendant has never shown any behavior that would suggest he suffered from any mental health issues nor has he had any problems to indicate he could not follow rules and regulations.

Dr. Brannon's report, attached and incorporated by reference hereto as Exhibit C, details the Defendant's psychosexual history on page 5.

Dr. Brannon, who will testify as to his testing at the time of sentencing, determined that the Defendant is at low risk as it concerns reoffending behavior.

## CONCLUSION

Selwyn Rosenstein intends to address the Court at the time of sentencing. Besides having accepted full responsibility, the remorse Selwyn Rosenstein feels for having become involved in this has been enormous. He has never undermined his acceptance of responsibility or his actions. Prior to this incident, he has never knowingly engaged in criminal activity in his lifetime. He has never questioned that his actions violated the law.

In the case of United States v. David Grober, 595 F. Supp. 2d 382 (D. N.J. 2008), the Court discussed an issue which the undersigned believes exists with the current state of the advisory sentencing guidelines as it concerns sentencing individuals for the type of offenses Selwyn Rosenstein is facing. His conduct involved consumption in the form of viewing and sending child pornography. It also involved providing access to others for different types of child pornography as it concerns the advertising charges. This is distinguishable from those who touch and abuse. By definition his conduct is less culpable. In Grober the Court noted:

**"This does not minimize what David Grober did or his towering insensitivity to the underlying acts portrayed or the concept that voyeurs re-victimize the children in the images by looking at them. But the Court cannot make Grober a surrogate for the monsters who prey on child victims through actual contact."** It is hoped that this Court will apply this same logic and reasoning when considering an appropriate sentence for Selwyn Rosenstein.

There have been questions posed by courts in the experience of the undersigned regarding whether those individuals who download and look at child pornography are as much of

11

USA vs. Rosenstein, Selwyn David
Case No.  22-80107-CR-CANNON

a threat as those who commit touch offenses.  There is also a consideration as to whether individuals charged with an aspect of child pornography where there is no allegation of touching are as dangerous as those charged with violent offenses such as murder.

The minimum mandatory for a person who downloads images is five years in prison. Additional mandatory minimums, depending on how these offenses are charged, can go from 10 to 20 years.

The Defendant would submit that the guidelines as scored , twenty-seven years in prison to thirty-three and three-quarters years, for a first offender are harsh, overstated and excessively severe.  If one also considers the age of the Defendant in this case – he could essentially receive a life sentence.[1]

Although a court cannot go below a mandatory minimum, there still needs to be consideration for a defendant's background and lack of any other involvement in the criminal justice system.  One federal judge in Wisconsin wrote "The fact that a person was stimulated by digital depictions of child pornography does not mean that he has or will in the future seek to assault a child."

The sentencing guideline enhancements for child pornography appear to be arbitrary and always results in a potentially harsher sentence for the accused, whether it be using a computer, number of images, type of child pornography – this always increases a sentence.

The Honorable Robert W. Pratt, United States District Judge in Des Moines, Iowa, in granting a variance in a child pornography case noted that sentencing guidelines in child pornography cases "do not appear to be based on any sort of science and the court has been

---

[1] This is analogous to the disparity in sentences for crack and powder cocaine where Federal judges can give shorter sentences depending on the composition of the cocaine in a particular case.

unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation related offenses."[2]

It often appears that those charged with possession or accessing child pornography are sentenced for things which they haven't done.  There should never be an assumption that one charged with child pornography has also committed a touch offense.  That type of inference cannot be part of the sentencing process.

The Court needs to consider the Defendant's age when imposing a sentence.  Just as a younger age could justify some leniency given one's inexperience and youth, older people have increasing impediments to live independently.  Medical and often mental health needs increase. There are issues with being able to care for one's self and live with a modicum of dignity.  It clearly takes additional efforts for prison officials to meet the needs of elderly inmates.  As a person ages, their risk of developing additional disabilities increase.

With these ideas in mind, the undersigned is asking this Court to consider the Defendant in this case:  If he is given the low end of the advisory guidelines, he would be 96 years old upon his release; he would be close to 103 if given the high end of the guidelines.  This type of sentence is overly excessive.  Between the enhancements and the mandatory minimum it appears certain the Defendant would likely never get out of prison.  This is extremely unfair and almost per se violative of the eighth amendment's prohibition against cruel or unusual punishments. There is nothing in the statutes which directs U.S. District Judges to impose the highest sentence possible for these crimes.  The guidelines and case law interpreting their application has always

---

[2] These ideas on pages 13 and 14 were excerpted from an article "Making Punishments Fit the Most Offensive Crimes."  Societal Revulsion at Child Pornography Consumers has led to stiff prison sentences and caused some judges to rebel, Amir Efrat, attached hereto as Exhibit D.

USA vs. Rosenstein, Selwyn David
Case No. 22-80107-CR-CANNON

discussed imposing a sentence that is "sufficient but not greater than necessary to promote the purposes of punishment."[3]

For these reasons, as well as what will be presented at the time of sentencing, it is respectfully requested that this Court impose the mandatory minimum prison sentence, as well as whatever period of supervision and special conditions this Court deems appropriate.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished, via ECM Filing to Kyle P. Reynolds and Gregory Schiller, Assistant United States Attorneys, 500 S. Australian Avenue, 4th Floor, West Palm Beach, FL 33401, this 29th day of November, 2022.

Respectfully submitted,

LAW OFFICES OF SALNICK & FUCHS, P.A.
1645 Palm Beach Lakes Boulevard
10th Floor, Suite 1000
West Palm Beach, Florida 33401-5014
Telephone: (561) 471-1000
Facsimile: (561) 659-0793

/s/Michael Salnick
MICHAEL SALNICK, Fla. Bar #270962

Attachments

---

[3] These ideas on pages 13 and 14 were excerpted from an article "Making Punishments Fit the Most Offensive Crimes." Societal Revulsion at Child Pornography Consumers has led to stiff prison sentences and caused some judges to rebel, Amir Efrat, attached hereto as Exhibit D.

14

## COMPOSITE EXHIBIT "A"

July 11, 2022

The US Magistrate, US District Court, Southern District of Florida.

Honorable members,

I am writing this letter concerning Selwyn Rosenstein.

I am very saddened in acknowledging the recent news of his arrest and subsequent incarceration.
Selwyn has been a friend and a model member of our community in the South Bay California. I find it
incredibly out of character that he be involved in criminal behavior. For over thirty years that I have
known him, I've seen only good and fine behavior.

His kind demeanor and charitable actions have been a model for the members of our community. He
has served the community with participation and helpfulness.
On a personal level he is considered a family member by many including myself.

With the above in mind I ask your honorable judge to consider his good deeds. I believe that he can
be an asset to the community. I do not condone any bad behavior, however I ask for clemency.

Selwyn can do good and should be given every chance to do so.

I thank you for reading this letter and pray for a favorable response.

Respectfully,

Rabbi Eli Hecht

Regional Director of Chabad of South Bay
24413 Hendricks Ave
Lomita, CA 90717

July 9, 2022

The US Magistrate
US District Court
Southern District of Florida

RE: Selwyn Rosenstein

Your Honor,

My name is Ronald Wolff. I have worked with and for Selwyn since approximately
1982. We first met when we both worked for a corporation called California
Minicomputer Systems, (CMS) in Los Angeles. Shortly after Selwyn joined CMS it was
purchased by Wespercorp, Inc. and moved to Orange County, CA.
Selwyn was heading the software development department of CMS and I was in charge
of the hardware installation and maintenance of six million dollars worth of computers
used by Southern California Gas Company. We both left Wespercorp in 1984 to start our
own companies. The company I started folded in 1994, so Selwyn hired me on as a
hardware installation and maintenance technician working for his company, Software
Consulting and Accounting Systems, (SCAS).
I worked in the office next to him from July 1994 until we decided to setup a virtual
office in 2004. I continued working with Selwyn via virtual office until my retirement in
2017.
In all the years I have known Selwyn, he has showed only the highest integrity and moral
character. He was a dedicated co-worker and boss who often worked long hours. The
product we provided for our customers at SCAS was a general accounting system called
Passport Software. There is a community of Passport providers who often seek help with
problems they are experiencing with new releases or bugs in the software. Selwyn, one
of the foremost experts on the product, freely provides solutions to many of the problems
encountered.
While I cannot remember the exact date, I do remember how proud Selwyn was when he
received his US Citizenship. I have also always been impressed with his dedication to his
Jewish religion and his adherence to Jewish principles.
If there is anything else I can do to help resolve this matter please contact me at the
address or phone number below.

Sincerely,

Ronald E Wolff

Ronald E Wolff
6510 W. 85th Street
Los Angeles, CA 90045
310-795-0100

12 November 2022

Judge Aileen Cannon

U.S. District Court

SOUTH FLORIDA

Your Honor,

I truly wish I could travel to Florida from Australia to be with my sister and family at this time to testify, but I am writing to you in the likely event that I am unable to make the trip due to work commitments. I am only glad that my sister, Alicia, can be there with my sister, Amy, at this time.

For over 42 years I have known and loved Selwyn Rosenstein as a close brother-in-law and an upstanding, caring and good human being.  Over the years, Selwyn has been responsible and accountable in our lives, always taking good care of me and my sisters, simply an integral part of our family. Never once have I (or my immediate family) ever had cause to doubt his sincerity, honesty and integrity.

I am, of course, very shocked to hear of the circumstance of his arrest and I do not condone the activities in which he has been involved.   It was poor judgement on his part.  Whatever private physiological damage that has occurred in his past to cause this predilection, I can only reflect on a man that loved and took care of my sister during thick and thin.  Within his own family, he has been a pillar of strength.  Generous to the core, he has looked after and supported his mother, sisters and extended a helping hand and financial assistance to his nieces and nephews – always and without fail - in their time of need.

He has tirelessly built up a good business, employed many others, training and upskilling his staff, giving them a means to earn a good living.  I am aware that everything he has taken a lifetime to build up is now dissolved which, of course, is extremely distressing and regrettable.

Selwyn is a much-loved member of my family who is admired by not only my mother, his mother-in-law, but all his nieces and nephews – including my children, who were always treated by him with love, good advice and respect.  He has this uncanny ability to listen, get to the core of the issue or problem and offer a resolution.

I do hope that during sentencing, you are able to consider all the good that Selwyn has done in his life and the humanity he has shown to myself and many others.  He has been a good husband, son, brother, uncle and employer; A man I know who would now feel only remorse and deeply regret what has led him to this circumstance.  I ask you to show leniency. It is sad that there appears to be no possibility of any good outcome for a man who gave so much, so selflessly to others.

Regards,

Kate Blignaut

29 Crest Ridge Pde, Brookwater, 4300 QLD, Australia

kateblignaut@bigpond.com

2459 Columbia Drive # 73
Clearwater   Florida
33763

12 September 2022

The U.S. Magistrate U.S. District Court
Southern District of Florida
701 Clematis Street
West Palm Beach   Florida
33401

Your Honor,

Case 22-cr-80107

My name is Vivienne Avis Gorton and I am Selwyn David Rosenstein's sister.  As his only living sibling, and the fact that I am 8 years older than him, I have some insight into Selwyn that I feel the Court should know.

Selwyn is a warm, kind and selfless person who is always willing to help however he can.  Although *still* at school when our father passed away, he was a loving son and did all he could to help our mother until her demise.
Family has played an important role in his life and he never forgot to send birthday greetings and Jewish New Year wishes to his siblings, nieces and nephews as well as great nephews and nieces.

Growing up in an Orthodox Jewish home, attending a Jewish day school, he has always tried to follow traditional Jewish values and traditions.  In latter years he has become a lot more observant, attending Synagogue and lessons on a regular basis.

Selwyn has provided accommodation for family when needed and 5 years ago purchased a Condo for me to live in.  He has supported me financially over the past 7 years for which I am very grateful.  He is one of the kindest, loyal and compassionate people I know both to young and old, irrespective of religion or ethnicity.

I understand that Your honor is going to be handing down a sentence in the near future and I respectfully plead that you look at Selwyn favorably.

Thank you for your consideration.

Sincerely,

Avis Gorton



9/16/2022

Judge Aileen Cannon

US District Court

Southern District of Florida

SUBJECT:  Selwyn D. Rosenstein

Dear Judge Cannon,

I am writing today asking the court to show kindness in sentencing Selwyn D. Rosenstein.

Selwyn has been a long-term business associate with both RealWorld Software and Passport Software, Inc., and he and I have done business together for more than 30 years.

I have always known and trusted Selwyn, who is honest and forthright and very astute with our accounting clients, including customizing our software to fit particular industries on their behalf.

Our Passport Partner channel values his input on a regular basis related to technical issues, and Passport has found his work to be superior in many areas.

I am saddened to realize he may not be part of our family of accounting-centric people, and hope that his time away is short vs. long.

For your consideration and with sincere regards,

Sandra Smith

Channel Sales Director

Passport Software, Inc.

800-969-7900 Ext 140

www.pass-port.com

ב"ה



12 Tammuz 5782
July 11, 2022

The US Magistrate
US District Court,
Southern District of Florida

My dear congregant and friend, Mr. Selwyn Rosenstein moved to
Florida a year ago.  Ever since Selwyn moved here he has been very
involved and a dedicated member of our community.

I know Selwyn as a G-d fearing man, that came to pray in Temple
daily. He was always friendly and pleasant, with a kind word for
everyone. Whenever needed he was there for us, both in presence and
financially. He has helped out and donated very graciously as well.

Knowing Selwyn as a fine and upright individual, I was completely
shocked to learn about the allegations and charges against him,
through Amy.

Sincerely,

Rabbi Yosef Raichik
Director - Chabad of West Boynton

9406 W Boynton Beach Blvd, Boynton Beach FL 33472 ·  561.740.8738

 Chabadwestboynton.com · Facebook/chabadwest · rabbi@chabadwestboynton.com

To,
US Magistrate, US District Court,
Southern District of Florida.
07/09/2022

I am writing in regard to Selwyn Rosenstein. I am a retired Systems Engineer and
have known Selwyn as a friend and colleague for over 42 years.
In the time I have known Selwyn he has always been a man of good character and
high moral standards and integrity, Selwyn is well liked and is respected by everyone
who knows him.

If you have any questions concerning Mr Rosenstein please feel free to contact me at
ralph.b@verizon.net.
Sincerely,

Ralph G Baecker

**EXHIBIT "B"**

# Michael P. Brannon, Psy.D.

**Licensed Psychologist, PY4928**
**11760 W. Sample Road, Suite 103**
**Coral Springs, Florida 33065**
**Telephone: (954) 766-8826**
**Fax: (954) 509-0007**
**e-mail: mpbrannon@theIBSL.com**
**website: www.theibsl.com**

## EDUCATION

| | |
|---|---|
| 1980-1988 | Doctorate of Psychology (Psy.D.), Nova University, Clinical Psychology |
| 1987-1988 | Doctoral Internship, Clinical Psychology, Northwest Dade Community Mental Health Center |
| 1978-1980 | Master of Science (M.S.), Nova University, Counseling Psychology |
| 1974-1978 | Bachelor of Science (B.S.), Nova University, Psychology |

## PROFESSIONAL EXPERIENCE

**1999-present**  **Co-Director, Institute for Behavioral Sciences and the Law – Fort Lauderdale, FL**
Director of Forensic Services Division - Forensic private practice with a focus on conducting state of the art forensic assessments in criminal, civil, and family law cases. Areas of specialty include cases involving substance abuse, sexual offenders, risk assessment, family problems, police specialty evaluations, violence and aggression issues, death penalty and other mitigation, and personal injury.

**1994-present**  **President, Michael P. Brannon, Psy.D., P.A., Fort Lauderdale, Florida**
Private and court-appointed evaluations of defendants charged with various crimes; these evaluations include (but are not limited to) forensic assessment on issues related to death penalty mitigation, police specialty evaluations, sexual offender risk, risk assessment in general, competency to proceed, competency to waive Miranda rights, substance abuse mitigation, and sanity. Also qualified as an expert thousands of times in forensic psychology for the prosecution and the defense as it relates to issues of sanity, competency, risk of danger to self and community, sex offenses, death penalty mitigation, workers compensation, and personal injury cases.

**1997-1999**  **Executive Director, Comprehensive Forensic and Clinical Services, Plantation, Florida**
Forensic and clinical private practice; forensic practice focused upon court-ordered evaluations, doctoral student supervision, and comprehensive intellectual and personality assessments; clinical practice focused upon sport psychology, sport injuries, law enforcement treatment, family, and couples therapy.

**1997-1999**     **Psychological Consultant, Brown Schools Elaine Gordon Center, Pembroke Pines, Florida**
Duties include the supervision of doctoral-level students and graduate-level staff conducting psychosexual, psychosocial, and psychological assessments with a variety of juvenile populations, including sex offenders, psychiatric patients, and foster care children.  Also conducted risk assessments at Brown Schools regarding completion of the program and safe release to the community.

**1988-1997**     **Private Practitioner**
Private clinical practice providing treatment services to a diverse range of clinical populations.  Areas of specialty included psychological evaluations, Independent Medical Examinations (psychological), parenting skills, marital therapy, child and adolescent disorders, and substance abuse disorders. Additional areas of expertise include Behavioral Medicine and Sport Psychology as they relate to chronic pain, physical injury, and impaired athletes.

**1988-1997**     **Rehabilitation Psychologist, HealthSouth Sports Medicine, Inc.**
Ongoing consultation was provided for physical therapists, orthopedic surgeons, and other physical rehabilitation personnel.  Additionally, direct service was provided to the patient population in regards to pain management techniques and stress reduction strategies.

**1988-1990**     **Clinical Director, The Starting Place**
Position involved management of eight clinical programs at two sites; responsibilities included supervision of all counseling activities, consultation on "difficult" cases, in-service presentations, psychological evaluations, training seminars for staff, grant writing, budget planning, and quality assurance.

**1983-1985**     **Director of Residential Services, The Starting Place**
Position involved the management of two adolescent residential units comprised of 60 clients and 28 staff members.  Developed a multi-faceted, behavioral management program for adolescents in the various treatment facilities. Administrative duties included budget planning, developing/implementing marketing strategies, assisting the Executive Director in expansion projects.

**1981-1983**     **Clinical Supervisor, The Starting Place**
Position involved supervision of the residential clinical team, progress assessment, facilitation of treatment plans; additionally, a caseload of 6-8 clients was maintained.

**1979-1981**     **Residential Counselor, The Starting Place**
Position entailed maintaining a caseload of 13-15 adolescents and their families; approaches included individual therapy, group therapy, family counseling, parent education, and crisis counseling.

**1979**          **Broward County Probation and Restitution**
Position involved conducting of group therapy sessions with 8-10 inmates on a bi-weekly basis; group focused on behavioral skills conducive to a smooth re-entry into society.

**1977-1978**   **Behavioral Therapist, Nova's Living and Learning Center**
Position involved conducting several weekly group sessions with 15 male adolescents; topics dealt with included assertiveness training, coping skills, socialization skills, drug education, and relaxation training; additional duties included the maintenance of a token economy point system.

## TEACHING EXPERIENCE

**2021-Present**   **Clinical Affiliate Associate Professor**
**Charles E. Schmidt College of Medicine at Florida Atlantic University**
Approved practicum site supervisor for fourth-year medical residents specializing in the area of forensic psychiatry.

**1998-2003**   **Adjunct Professor, Nova Southeastern University (Doctorate Level)**
Courses and subjects taught in the forensic specialty division include Introduction to Forensic Psychology, Forensic Assessment, Forensic Practicum Supervision, Malingering and Deception, Criminal Responsibility, Juvenile Competency, and Personal Injury.

**1988-1997**   **Adjunct Professor, Broward Community College/Nova College**
Courses taught include Introductory Psychology, Child and Adolescent Development, Psychology of Adjustment, Sport Psychology, Behavior Modification, Learning Theories, and Human Sexuality.

## PRACTICUMS

**1985**          **Crisis Stabilization Unit**
Comprehensive psychological test batteries including personality and intellectual testing were administered to individuals with severe mental health problems. Crisis management and supportive counseling were also conducted on-site with juveniles and adults.

**1984**          **North Miami Community Mental Health Center**
Provided case management services for a population of chronic psychiatric patients on an outpatient basis; duties also included conducting initial screenings of patients, crisis counseling, and psychological testing.

## PROFESSIONAL AFFILIATIONS

American Professional Society on the Abuse of Children (APSAC)
Florida Psychological Association (FPA)
Association for Treatment of Sexual Abusers (ATSA)
Psychology and the Law Society (Division 41, American Psychological Association)

## PROFESSIONAL POSITIONS

**2014 – present**   Advisory Board Member – Broward Crime Commission
**2008 – 2010**      Member of the Florida Bar Grievance Committee
**1998 – 2000**      Member of the Florida Bar Grievance Committee

## PROFESSIONAL PRESENTATIONS

**September 2022**   **Conducting Competency to Proceed Evaluations**
Broward County State Attorney's Office

**August 2022**     **The Proper Use of Psychological Experts in Family Law Cases**
Broward County Family Law Attorneys / Broward County Courthouse

**June 2022**       **The Role of the Forensic Psychiatrist**
Charles E. Schmidt College of Medicine at Florida Atlantic University
Webinar

**May 2022**        **Sexually Violent Predator (Jimmy Ryce) Evaluations**
Florida Prosecuting Attorney's Association
Webinar

**March 2022**      **Ethical Testimony in Sex Offender Cases**
Florida Association for the Treatment of Sexual Abusers

**October 2021**    **Child Witnesses: What Could Possibly Go Wrong?**
Public Defender's Office - San Antonio, Texas
Webinar

**May 2021**        **Differential Diagnoses: How to Effectively Get It Wrong Every Time**
Florida Psychological Association
Webinar

**February 2021**   **Identifying and Coping with Stress, Anxiety, and Trauma**
Different Brains / Neurodiversity
Webinar

| | |
|---|---|
| **January 2021** | **Diagnostic Inflation – Why Everything is Not a Diagnosis**<br>Monroe County State Attorney's Office<br>Webinar |
| **December 2020** | **Diagnostic Inflation – Why Everything is Not a Diagnosis**<br>Palm Beach County State Attorney's Office<br>Webinar |
| **November 2020** | **Covid-19 Pandemic: Effects on Lawyers and Their Clients**<br>Western North Carolina Federal Public Defenders Office<br>Webinar |
| **September 2020** | **Child Interviews: What Could Possibly Go Wrong?**<br>Florida Association of Criminal Defense Lawyers<br>Webinar |
| **July 2020** | **Covid-19 Pandemic: Effects on Lawyers and Their Clients**<br>Palm Beach Association for Criminal Defense Lawyers<br>Webinar |
| **July 2020** | **Diagnostic Inflation – Why Everything is Not a Diagnosis**<br>Broward County State Attorney's Office<br>Webinar |
| **July 2020** | **Covid-19 Pandemic: Effects on Lawyers and Their Clients**<br>Broward Association for Criminal Defense Lawyers<br>Webinar |
| **June 2020** | **Diagnostic Inflation – Why Everything is Not a Diagnosis**<br>Fort Pierce State Attorney's Office<br>Webinar |
| **May 2020** | **Managing Emotional Distress Due to Coronavirus**<br>Broward Crime Commission<br>Webinar |
| **May 2020** | **Diagnostic Inflation – Why Everything is Not a Diagnosis**<br>Miami-Dade County State Attorney's Office<br>Webinar |
| **August 2019** | **The Mind of a Psychopathic Killer**<br>Broward Crime Commission<br>Davie, Florida |

| May 2019 | **Psychology in the Courtroom** |
|---|---|
| | Florida Judicial Conference |
| | Orlando, Florida |

| April 2019 | **Psychopaths: Myths and Realities** |
|---|---|
| | Crisis Response Team (police) |
| | Nova Southeastern University, Davie, FL |

| March 2019 | **Testifying in Court** |
|---|---|
| | Florida Association for Treatment of Sexual Abusers |
| | Orlando, Florida |

| January 2019 | **Law Enforcement and Mental Health Issues** |
|---|---|
| | Fort Lauderdale Police Department |
| | Fort Lauderdale, Florida |

| May 2018 | **Conducting Competency to Proceed Evaluations** |
|---|---|
| | Florida Judicial Conference |
| | Orlando, Florida |

| May 2018 | **Working with Child Witnesses** |
|---|---|
| | Florida Prosecuting Attorney's Association |
| | Tampa / Orlando, Florida |

| May 2018 | **Internet Sex Offenders** |
|---|---|
| | Florida Prosecuting Attorney's Association |
| | Tampa / Orlando, Florida |

| April 2018 | **False Confessions and Miranda Waivers** |
|---|---|
| | University of Miami School of Law |
| | Coral Gables, Florida |

| March 2018 | **Coping with Stress in the Legal Profession** |
|---|---|
| | South County Bar Association |
| | Delray Beach, Florida |

| October 2017 | **Conducting Capacity Evaluations in Elder Care Cases** |
|---|---|
| | Bench/Bar Conference |
| | Fort Lauderdale, Florida |

| June 2017 | **Competency to Proceed: Legal and Psychological Issues** |
|---|---|
| | Broward County State Attorney's Office |
| | Fort Lauderdale, Florida |

| | |
|---|---|
| **May 2017** | **Race, Culture, and Gender on the Bench**<br>Florida Judicial Conference<br>Naples, Florida |
| **May 2016** | **Mental Health Issues in Sex Crimes: Eyewitness Identification, False Confessions, Child Witnesses**<br>Florida Prosecuting Attorneys Association<br>Orlando / Tampa, Florida |
| **December 2015** | **Interviewing Child Witnesses**<br>Palm Beach Association of Criminal Defense Attorneys<br>West Palm Beach, Florida |
| **May 2015** | **Sex Crimes: Mental and Psychological Issues**<br>Florida Prosecuting Attorneys Association<br>Orlando, Florida<br>Tampa, Florida |
| **May 2015** | **Interviewing and Deposing Child Witnesses**<br>Palm Beach Public Defender Office<br>West Palm Beach, Florida |
| **April 2015** | **Competency to Proceed Evaluations**<br>Palm Beach Association of Criminal Defense Attorneys<br>West Palm Beach, Florida |
| **April 2015** | **Defending Internet Sex Crimes**<br>Federal Criminal Defense Lawyers<br>Asheville, North Carolina |
| **November 2014** | **Suggestibility of Child Witnesses**<br>National Association of Criminal Defense Lawyers<br>Las Vegas, Nevada |
| **September 2014** | **The Pinocchio Principle: Lies, Detection, and Deception in the Workplace**<br>International Association of Employee Assistance Professionals in Education<br>Orlando, Florida |
| **August 2014** | **DSM-5: What Prosecutors Need to Know**<br>Florida Prosecuting Attorneys Association<br>Naples, Florida |

| July 2014 | **Sex, Lies, and Vignettes: Ethical Dilemmas in Forensic Psychology**<br>Florida Psychological Association<br>Bonita Springs, Florida |
|---|---|
| May 2014 | **Lying in the Workplace**<br>Employee Assistance Program Association<br>Fort Lauderdale, Florida |
| May 2014 | **DSM-5: What Lawyers Need to Know**<br>Fort Pierce State Attorney's Office<br>Fort Pierce, Florida |
| April 2014 | **Malingering: Costs to Police, Courts, and Treatment Providers**<br>Broward County Crime Commission<br>Deerfield Beach, Florida |
| February 2014 | **DSM – 5: What Lawyers Need to Know**<br>Dade County State Attorney Office<br>Miami, Florida |
| November 2013 | **Mental Illness and Violence: What's the Connection?**<br>Broward Crime Commission<br>Fort Lauderdale, Florida |
| August 2013 | **DSM – 5: What Lawyers Need to Know**<br>Broward County State Attorney Office<br>Fort Lauderdale, Florida |
| July 2013 | **DSM – 5: What Lawyers Need to Know**<br>Palm Beach Public Defender Office<br>West Palm Beach, Florida |
| July 2013 | **The Pinocchio Effect: Lying in the Workplace**<br>Broward Sheriff's Office, Employee Assistance Program |
| July 2013 | **Cross-Examination of Expert Witnesses**<br>National Black Prosecutor Association<br>Orlando, Florida |
| May 2013 | **Psychological Defenses: Self Defense, Battered Person Syndrome, Posttraumatic Stress Disorder, and Intoxication as Legal Defenses**<br>Florida Prosecuting Attorneys Association<br>Orlando, Florida |

| | |
|---|---|
| **April 2013** | **Understanding Sex Offenders**<br>Pembroke Pines Police Department<br>Pembroke Pines, Florida |
| **January 2013** | **Psychological Issues Related to Victims of Abuse**<br>17th Circuit State Attorney's Office<br>Fort Lauderdale, Florida |
| **November 2012** | **Cross-examination of Expert Psychological Witnesses**<br>15th Circuit State Attorney's Office<br>West Palm Beach, Florida |
| **October 2012** | **Defending the Sex Offender: The Role of the Forensic Psychologist**<br>National Association of Criminal Defense Lawyers (NACDL)<br>New Orleans, Louisiana |
| **October 2012** | **Mental Retardation and Other Developmental Disabilities**<br>Office of Regional Conflict Counsel<br>Fort Lauderdale, Florida |
| **June 2012** | **Interviewing Child Witness**<br>19th Circuit Public Defender's Office<br>Fort Pierce, Florida |
| **February 2012** | **Defending the Internet Sex Offender**<br>National Association of Criminal Defense Lawyers (NACDL)<br>Fort Lauderdale, Florida |
| **January 2012** | **Competency to Proceed and Malingering Incompetency**<br>17th Circuit State Attorney's Office<br>Fort Lauderdale, Florida |
| **May 2011** | **Competency to Waive Miranda and False Confessions**<br>Workshop to Private Attorneys, Assistant State Attorneys, and Assistant Public Defenders<br>Coconut Creek, Florida |
| **August 2010** | **Sexual Offender Risk Assessments and Safety Plans (as part of Evaluation and Treatment of Sexual Offenders)**<br>Institute for Behavioral Sciences and the Law<br>Davie, Florida |
| **January 2008** | **Personal Injury Evaluations - Proper Use of Psychological Testimony**<br>Broward County Personal Injury Workshop<br>Fort Lauderdale, FL |

| | |
|---|---|
| **July 2007** | **Cross-Examination of Psychologists/Malingering Mental Illness**<br>17th Circuit State Attorney's Office<br>Fort Lauderdale, FL |
| **October 2005** | **Mental Health Issues in High Profile Criminal Litigation**<br>Broward County Bench/Bar Conference<br>Fort Lauderdale, FL |
| **August 2005** | **The Truth, the Whole Truth, and Nothing but the Truth? Analysis and Assessment of Statement Reliability**<br>Conference for Lawyers and Psychologists<br>Fort Lauderdale, FL |
| **April 2005** | **High Profile Cases: The Real Story**<br>Arkansas Association of Criminal Defense Lawyers<br>Tunica, Mississippi |
| **February 2005** | **The Difficult Client: Psychological Perspectives**<br>Utah Association of Criminal Defense Lawyers<br>Salt Lake City, Utah |
| **February 2005** | **The Psychology of Terrorism & Other Related Crimes**<br>Arkansas Association of Criminal Defense Lawyers<br>Lake Hamilton, Arkansas |
| **June 2004** | **Juvenile Competencies to Stand Trial and Miranda Waivers**<br>Broward County Public Defender's Office, Juvenile Unit<br>Fort Lauderdale, FL |
| **January 2004** | **The Psychology of Stalking**<br>Annual Educational Program of the Conference of County Court Judges of Florida<br>Amelia Island, FL |
| **October 2003** | **Psychological Issues in the Courtroom**<br>Broward County State Attorney's Office, Felony Trial Unit<br>Fort Lauderdale, FL |
| **July 2003** | **Is He/She Competent? The Judge's Role**<br>2003 Florida Conference of County Court Judges<br>Fort Myers, FL |
| **June 2003** | **Mental Health Issues and the Law**<br>Annual Business Meeting of Florida Circuit Judges<br>Orlando, FL |

| | |
|---|---|
| **April 2001** | **Competency to Stand Trial and Competency to Waive Miranda Rights for Juveniles**<br>Broward County Public Defender Office - Juvenile Division<br>Fort Lauderdale, FL |
| **January 2001** | **Understanding Psychological Issues in Forensic Psychological Evaluations**<br>Broward County State Attorney's Office<br>Fort Lauderdale, FL |
| **August 2000** | **Cross-Examination of Substance Abuse and Downward Departure Defenses**<br>Broward County State Attorney's Office<br>Fort Lauderdale, Florida |
| **May 1998** | **Challenging Psychiatric & Psychological Testimony in the Courtroom**<br>Wyndham Hotel, Miami, FL |
| **March 1998** | **Psychology in the Courtroom**<br>Workshop to Private Attorneys<br>Fort Lauderdale, FL |
| **February 1997** | **Malingering and Deception in Worker's Compensation Cases**<br>Workers Compensation State Conference<br>Orlando, FL |
| **April 1997** | **Psychological Issues in Personal Injury Cases**<br>South Florida Insurance Claims Adjusters Conference<br>Miami, FL |

## PSYCHOLOGICAL WORKSHOPS ATTENDED

| | |
|---|---|
| **March 2022** | **STATIC-99R Update**<br>Florida Association for the Treatment of Sexual Abusers |
| **March 2020** | **Drugged to Death**<br>**7th Annual Narcotics Conference**<br>Broward Crime Commission<br>Delray Beach, Florida |
| **February 2020** | **Domestic Violence**<br>Florida Psychological Association<br>Fort Lauderdale, Florida |

| | |
|---|---|
| **November 2019** | **Kids That Kill II**<br>Broward Crime Commission<br>Davie, Florida |
| **August 2019** | **Society Gone Mad**<br>Broward Crime Commission<br>Davie, Florida |
| **April 2019** | **Dying for a Fix**<br>**6th Annual Narcotics Conference**<br>Broward Crime Commission<br>Fort Lauderdale, Florida |
| **March 2019** | **Digital Deviance / Cybersex**<br>Florida Association for Treatment of Sexual Abusers<br>Orlando, Florida |
| **November 2018** | **Kids that Kill**<br>Broward Crime Commission<br>Tamarac, Florida |
| **October 2018** | **Making the Case: Investigating, Litigating, and Working with Families**<br>Florida American Professional Society on the Abuse of Children<br>Rockledge, Florida |
| **June 2018** | **The Use of Media in Forensic Interviews with Children**<br>American Professional Society on the Abuse of Children<br>New Orleans, Louisiana |
| **June 2018** | **Forensically Interviewing Young Children**<br>American Professional Society on the Abuse of Children<br>New Orleans, Louisiana |
| **June 2018** | **Deception Detection: Is It Possible to Tell When a Child is Lying?**<br>American Professional Society on the Abuse of Children<br>New Orleans, Louisiana |
| **June 2018** | **Comparative Implementation of a Trauma-Informed Model in Both a Private and a Public Child Welfare Setting**<br>American Professional Society on the Abuse of Children<br>New Orleans, Louisiana |
| **June 2018** | **Sex Offenders and the Use of Technology to Offend**<br>American Professional Society on the Abuse of Children<br>New Orleans, Louisiana |

| | |
|---|---|
| **June 2018** | **A Multidisciplinary Approach to Child Pornography on the Internet: Impact on Its Victims**<br>American Professional Society on the Abuse of Children<br>New Orleans, Louisiana |
| **June 2018** | **Child Sex Trafficking Screening Interviews vs. Forensic Interviews**<br>American Professional Society on the Abuse of Children<br>New Orleans, Louisiana |
| **June 2018** | **Reducing Disclosure Failures in NICHD-Based Forensic Interviews / The Use of Media in Forensic Interview with Children**<br>American Professional Society on the Abuse of Children<br>New Orleans, Louisiana |
| **June 2018** | **Take It Back: When Children Recant Allegations of Sexual Abuse**<br>American Professional Society on the Abuse of Children<br>New Orleans, Louisiana |
| **April 2018** | **Best Practices in the Assessment of Adaptive Functioning**<br>Nova Southeastern University<br>Davie, Florida |
| **April 2018** | **Adolescents Who Sexually Abuse: What Works in Treatment**<br>Florida Association for the Treatment of Sexual Abusers<br>Orlando, Florida |
| **April 2018** | **Legal Standards Frye and Daubert and Scientific Standards for Acceptance of Assessments**<br>Florida Association for the Treatment of Sexual Abusers<br>Orlando, Florida |
| **April 2018** | **Ethics and Boundaries**<br>Florida Association for the Treatment of Sexual Abusers<br>Orlando, Florida |
| **October 2017** | **Recent Advances in Our Understanding and Management of ADHD**<br>Davie, Florida |
| **October 2017** | **Understanding and Managing Vicarious Traumatization**<br>Florida Psychological Association<br>Miami, Florida |
| **August 2017** | **What Psychologists Need to Know About Soft Skills Deficits Experienced with Individuals with Autism-Spectrum Disorder**<br>Boca Raton, Florida |

| | |
|---|---|
| **June 2017** | **Interviewing Children to Preserve Accurate Testimony**<br>American Academy of Forensic Psychology<br>Asheville, North Carolina |
| **May 2017** | **The Shell Game of Addictive Drugs: Community Exploitation, Mind-Altering Manipulation, and Death**<br>Broward Crime Commission |
| **September 2016** | **Juvenile and Adolescent Violence: Why the Unthinkable Happens**<br>Broward Crime Commission<br>Fort Lauderdale, Florida |
| **April 2016** | **Assessment of Internet Offenders**<br>Florida Association for the Treatment of Sexual Abusers<br>Orlando, Florida |
| **April 2016** | **Designer Drugs: Big Bang Addiction, Mental Illness, and Death**<br>Broward Crime Commission<br>Fort Lauderdale, Florida |
| **March 2016** | **Testifying and Consulting as an Expert in Eyewitness Identification Cases**<br>American Psychology-Law Society<br>Atlanta, Georgia |
| **March 2016** | **Statistical/Methodological Developments in Eyewitness Identification**<br>American Psychology-Law Society<br>Atlanta, Georgia |
| **March 2016** | **Child Witnesses**<br>American Psychology-Law Society<br>Atlanta, Georgia |
| **March 2016** | **Eyewitness Memory Parts 1 and 2**<br>American Psychology-Law Society<br>Atlanta, Georgia |
| **March 2016** | **Estimator Variables in Eyewitness Identification**<br>American Psychology-Law Society<br>Atlanta, Georgia |
| **March 2016** | **Eyewitness Confidence Decision-making**<br>American Psychology-Law Society<br>Atlanta, Georgia |

| | |
|---|---|
| **March 2016** | **Show-ups**<br>American Psychology-Law Society<br>Atlanta, Georgia |
| **March 2016** | **Factors in Evaluation of Witness Identification Testimony**<br>American Psychology-Law Society<br>Atlanta, Georgia |
| **February 2016** | **Ethics and Law: Rules and Risks in Child and Family Therapy**<br>Florida Psychological Association<br>Fort Lauderdale, Florida |
| **February 2016** | **Medical Errors**<br>Florida Psychological Association<br>Fort Lauderdale, Florida |
| **November 2014** | **Schedule 1 Narcotics: Investigating the Mental State Behind Violent Crimes**<br>Broward Crime Commission<br>Deerfield Beach, Florida |
| **October 2014** | **Criminal Forensic Psychology**<br>Florida Psychological Association<br>West Palm Beach, Florida |
| **October 2014** | **Assessment of Children's Behavioral, Social, and Clinical Functioning**<br>Nova Southeastern University<br>Davie, Florida |
| **September 2014** | **The Many Faces of Expert Testimony: Challenges and Opportunities**<br>New York State Psychological Association Forensic Division<br>New York, New York |
| **May 2014** | **Insanity Defense Evaluations**<br>American Academy of Forensic Psychology<br>Philadelphia, Pennsylvania |
| **May 2014** | **Ethical Issues in Forensic Psychology Practice**<br>American Academy of Forensic Psychology<br>Philadelphia, Pennsylvania |
| **February 2014** | **Medical Error Reduction Training for Behavioral Health Care Practitioners**<br>Florida Psychological Association<br>Miami, Florida. |

| **February 2014** | **Professional Ethics and Florida Law and Rules**<br>Florida Psychological Association<br>Miami, Florida |
|---|---|
| **January 2014** | **Conducting Competency to Proceed Evaluations in Immigration Cases**<br>Miami, Florida |
| **November 2013** | **Challenges to Diagnostic Accuracy in Forensic Assessment**<br>American Academy of Forensic Psychology<br>Fort Lauderdale, Florida |
| **November 2013** | **Forensic Neuropsychiatry of Traumatic Brain Injury**<br>American Academy of Forensic Psychology<br>Fort Lauderdale, Florida |
| **October 2013** | **The DSM-5: New Disorders, New Categories, New Headaches**<br>Nova Southeastern University<br>Davie, Florida |
| **September 2013** | **A Primer in Violence Risk Assessment**<br>New York State Psychological Association Forensic Division<br>New York, New York |
| **September 2013** | **Risk Assessment 2013: An Update for Psychologists and Attorneys**<br>New York State Psychological Association Forensic Division<br>New York, New York |
| **June 2013** | **Overview of the DSM - 5 – Bridging the Gap**<br>Comprehensive Assessment Center<br>Miami Lakes, Florida |
| **April 2013** | **Fitness for Duty Evaluations for Police Officers**<br>American Academy of Forensic Psychology<br>Chicago, Illinois |
| **April 2013** | **Pre-employment Screening of Police Applicants**<br>American Academy of Forensic Psychology<br>Chicago, Illinois |
| **February 2013** | **Miranda Warnings and Waivers: Conceptual Framework and Professional Practice**<br>American Academy of Forensic Psychology<br>New Orleans, Florida |

| | |
|---|---|
| **February 2013** | **Comprehensive Assessment of Feigning in Forensic Contexts**<br>American Academy of Forensic Psychology<br>New Orleans, Florida. |
| **December 2012** | **Conducting Parental Capacity Evaluations in Child Protection Matters**<br>American Academy of Forensic Psychology<br>Sarasota, Florida |
| **October 2012** | **Forensic Conference**<br>**New Guidance for Forensic Report Writing**<br>**Competency as a Forensic Psychologist**<br>NYSPA Forensic Division Conference 2012<br>New York, New York |
| **August 2012** | **Knowledge and Practice with Juveniles Who Have Sexually Abused**<br>Tampa, Florida |
| **August 2012** | **APA Division 18 – Police and Public Safety Psychological Services Section Mini-Conference**<br>Orlando, Florida |
| **September 2011** | **Conducting Guardianship Evaluations**<br>University of South Florida<br>Boca Raton, Florida |
| **September 2011** | **Child Sexual Abuse: Evaluation Techniques**<br>University of South Florida<br>Boca Raton, Florida |
| **July 2011** | **Assessment, Diagnosis, and Treatment of Sex and Pornography Addictions in the New Frontier**<br>Elements Behavioral Health<br>Boca Raton, Florida |
| **April 2011** | **Litigating Graham II: Experts, Evaluations, and Evidence**<br>University of South Florida<br>Orlando, Florida |
| **November 2010** | **Evaluating Criminal Responsibility**<br>American Academy of Forensic Psychology<br>Miami, Florida |
| **November 2010** | **Managing Violence Risk**<br>American Academy of Forensic Psychology<br>Miami, Florida |

| November 2010 | **Advanced Topics in Criminal Forensic Evaluations**<br>American Academy of Forensic Psychology<br>Miami, Florida |
|---|---|
| September 2010 | **Forensic Competence**<br>**Introduction to the MMPI-2-RF with an Emphasis on Forensic and Child Custody Evaluations**<br>**Assessing Drug and Alcohol Issues in Custody Evaluations**<br>NYSPA Forensic Division Conference 2010<br>New York, New York |
| August 2010 | **Evaluation and Treatment of Sexual Offenders**<br>Institute for Behavioral Sciences and the Law<br>Davie, Florida |
| February 2010 | **Advanced Topics in Child Custody Evaluations**<br>American Academy of Forensic Psychology<br>New Orleans, Louisiana |
| February 2010 | **Introduction to Child Custody and Parenting Evaluations**<br>American Academy of Forensic Psychology<br>New Orleans, Louisiana |
| January 2010 | **Parent Coordination Training**<br>University of South Florida<br>Tampa, Florida |
| January 2010 | **Bipolar Disorder and Other Major Mood Disorders in Youth and Adulthood**<br>Cross Country Education<br>West Palm Beach, Florida |
| March 2009 | **Introduction to the WAIS-IV**<br>Florida Psychological Association<br>Miami, Florida |
| March 2008 | **Adult Sex Offender Risk Assessment**<br>Florida Association for the Treatment of Sexual Abusers<br>Tampa, FL. |
| March 2008 | **MMPI-2-RF (Restructured Form): An Introduction for Forensic Psychologists**<br>MMPI-2/MMPI-A Workshops and Symposia<br>Jacksonville, FL |

| | |
|---|---|
| **April 2007** | **Forensic Applications of the MMPI-2**<br>MMPI-2/MMPI-A Workshops and Symposia<br>Fort Lauderdale, FL |
| **January 2006** | **Domestic Violence**<br>South Florida Society for Trauma-Based Disorders<br>Fort Lauderdale, FL. |
| **April 2005** | **Effective and Responsible Use of Psychological Tests in Pre-Employment Selection and Fitness for Duty Evaluations**<br>MMPI-2/MMPI-A Workshops and Symposia<br>Fort Lauderdale, FL |
| **April 2005** | **Issues in Risk Assessment of Sex Offenders in Community Treatment**<br>**Developmentally Delayed Sex Offenders**<br>**Domestic Violence Risk Assessment and Sexual Abuse**<br>Florida Association for the Treatment of Sexual Abusers<br>Tampa, FL |
| **February 2005** | **Out of the Mouths of Babes: The Challenges Attorneys Face When Children Testify**<br>Fort Lauderdale, FL |
| **February 2005** | **Young Offenders, Mental Disorders, and Immaturity: Challenges for Lawyers and Mental Health Professionals**<br>Fort Lauderdale, FL |
| **June 2004** | **ABA-APA National Conference on Children and the Law**<br>Washington, D.C. |
| **May 2004** | **Psychopathology of Homicide**<br>American Academy of Forensic Psychology<br>Nashville, TN |
| **May 2004** | **Threat Assessment: An Approach to Prevent Targeted Violence**,<br>American Academy of Forensic Psychology<br>Nashville, Tennessee |
| **March 2004** | **Bipolar Disorder in Youth**<br>Cross Country University<br>West Palm Beach, FL |
| **March 2004** | **An Introductory Workshop on the Personality Assessment Inventory (PAI)**<br>Society for Personality Assessment<br>Miami, FL |

| | |
|---|---|
| **March 2004** | **Presenting the Rorschach: Forensic and Clinical Applications**<br>Society for Personality Assessment<br>Miami, FL |
| **March 2004** | **Assessing Response Style in the Context of Forensic Evaluation**<br>Society for Personality Assessment<br>Miami, FL |
| **January 2004** | **Expert Witnesses, The Adversary System & The Voices of Reason: An Advanced Workshop in Ethics and Law in Forensic Examinations and Testimony**<br>University of South Florida<br>Tampa, FL |
| **November 2003** | **Medical Errors**<br>Roger B. Szuch Seminars<br>Fort Lauderdale, FL |
| **October 2003** | **Auditory Processing Disorders: Identification, Assessment, and Interventions**<br>Nova Southeastern University's Center for Psychological Studies<br>Fort Lauderdale, FL |
| **October 2003** | **Introduction to the NEPSY: Applications and Implications**<br>Nova Southeastern University's Center for Psychological Studies<br>Fort Lauderdale, FL |
| **October 2003** | **Attention Deficit Hyperactivity Disorder: A Critical Analysis of State-of-the-Art Assessment and Treatment**<br>Nova Southeaster University's Center for Psychological Studies<br>Fort Lauderdale, FL |
| **October 2003** | **Assessment for a New Generation: The Wechsler Intelligence Scale for Children Fourth Edition (WISC-IV)**<br>Nova Southeastern University's Center for Psychological Studies<br>Fort Lauderdale, FL |
| **July 2003** | **Child Witnesses: Legal Dilemmas and Solutions**<br>Institute for Behavioral Sciences and the Law<br>Fort Lauderdale, Tampa, and Tallahassee, FL. |
| **April 2003** | **Ethics, Law and Avoiding Liability in the Practice of Psychology**,<br>Association of State and Provincial Psychology Boards<br>Fort Lauderdale, FL |

| | |
|---|---|
| **February 2003** | **Psychological Issues in Criminal Cases**<br>American Academy of Forensic Psychology<br>Hartsdale, NY |
| **February 2003** | **Assessing Violent Juvenile Offenders**<br>American Academy of Forensic Psychology<br>Hartsdale, NY |
| **January 2003** | **Perspectives on the Violent-Aggressive Child and Adolescent**<br>University of Miami School of Medicine<br>Miami, FL |
| **December 2002** | **MMPI-2/MMPI-A Workshop**<br>Kent State University<br>Tampa, FL |
| **November 2002** | **Profiling and Crime Analysis: Homicides, Sex Crimes, and Other Crimes of Violence**<br>Nova Southeastern University's Center for Psychological Studies<br>Fort Lauderdale, FL |
| **September 2002** | **ADHD in Children and Adolescents: Theory, Diagnosis, and Management**<br>National Association for Continuing Education<br>Orlando, FL |
| **May 2002** | **Attention Deficit Hyperactivity Disorder: The Latest Assessment and Treatment Strategies**<br>New Century Seminars<br>Kansas City, MO |
| **February 2002** | **Preserving the Reliability of Children's Testimony: Update on Cognitive and Social Considerations in Taking Statements from Children**, University of South Florida<br>Tampa, FL |
| **October 2001** | **Assessing Criminal Competencies**<br>University of South Florida<br>Tampa, FL |
| **October 2001** | **Forensic Evaluation and Juvenile Justice**<br>University of South Florida<br>Tampa, FL |

| | |
|---|---|
| **October 2001** | **Assessing Youth Violence Risk**<br>University of South Florida<br>Tampa, FL |
| **October 2001** | **Assessing and Managing Violence Risk**<br>University of South Florida<br>Tampa, FL |
| **May 2001** | **Traumatic Brain Injury II**<br>University of South Florida College of Nursing<br>Key West, FL |
| **July 2001** | **Practical Applications of the Proposed APA Ethics Code**<br>Florida Psychological Association<br>Tallahassee, FL |
| **July 2001** | **Transforming Your Clinical Expertise into Workshops and Consultation**<br>Florida Psychological Association<br>Tallahassee, FL |
| **July 2001** | **Advanced Interpretation of the MMPI-2 and MMPI-A**<br>Florida Psychological Association<br>Tallahassee, FL |
| **July 2001** | **Rorschach Interpretation in Clinical and Forensic Practice**<br>Florida Psychological Association<br>Tallahassee, FL |
| **June 2001** | **Forensic Science Symposium: Emerging Technologies in Forensic Investigation**<br>Nova Southeastern University's Center for Psychological Studies<br>Fort Lauderdale, FL |
| **March 2001** | **36th Annual Workshops and Symposium on the MMPI-2 & MMPI-A,**<br>University of Minnesota<br>Safety Harbor, FL |
| **February 2001** | **ADHD and Oppositional Defiant Children**<br>The Institute for Continuing Education<br>Fort Lauderdale, FL |
| **September 2000** | **Domestic Violence, Ethics, and HIV/AIDS Update**<br>Women in Distress<br>Fort Lauderdale, FL |

| | |
|---|---|
| **September 2000** | **Risk Assessment of Sexual Offenders** |
| | American Academy of Forensic Psychology |
| | Hartsdale, NY |
| | |
| **September 2000** | **Risk Assessment: Advanced Considerations** |
| | American Academy of Forensic Psychology |
| | Hartsdale, NY |
| | |
| **September 2000** | **Advanced Forensic Psychology Practice: Issues and Applications**, |
| | American Academy of Forensic Psychology |
| | Hartsdale, NY |
| | |
| **September 2000** | **Forensic Case Analysis Using the MMPI-2 & Rorschach** |
| | American Academy of Forensic Psychology |
| | Hartsdale, NY |
| | |
| **September 2000** | **Comprehensive Examination of Malingering in Forensic Settings**, |
| | American Academy of Forensic Psychology |
| | Hartsdale, NY |
| | |
| **January 2000** | **Psychological, Legal, and Ethical Concerns Working with Domestic Violence Families** |
| | Nova Southeastern University's Center for Psychological Studies |
| | Fort Lauderdale, FL |
| | |
| **November 1999** | **Annual Institute on Law, Psychiatry, and Psychology** |
| | University of Miami School of Law |
| | Miami Beach, FL |
| | |
| **October 1999** | **ABA/APA Conference: Psychological Expertise and Criminal Justice**, |
| | American Psychological Association |
| | Washington, DC |
| | |
| **September 1999** | **Association for the Treatment of Sexual Abusers 18th Annual Research & Treatment Conference** |
| | New England Forensic Associates |
| | Arlington, MA |
| | |
| **September 1999** | **Using and Testifying about Sex Offender Risk Assessments** |
| | New England Forensic Associates |
| | Arlington, MA |
| | |
| **September 1999** | **Assessing Psychopathy: Clinical and Forensic Applications of the Hare Psychopathy Checklist-Revised (PCL-R)** |
| | Sinclair Seminars |
| | Orlando, FL |

| January 1999 | **Assessment of Violence Potential**<br>Specialized Training Services<br>San Diego, CA |
|---|---|
| August 1998 | **Assessing and Managing Violence Risk**<br>University of South Florida<br>Grand Palms County Club, FL |
| June 1998 | **The Violent Mind**<br>Nova Southeastern University's Center for Psychological Studies<br>Fort Lauderdale, FL |
| June 1998 | **Sexual Offenders: Identification, Management, and Treatment**<br>Florida Psychological Association<br>Tallahassee, FL |

## WEBINAR / AUDIO-VISUAL CONFERENCES ATTENDED

| October 2022 | **The Development of Conduct Disorder and Aggression**<br>Palo Alto University |
|---|---|
| October 2022 | **What the Law Should (but often doesn't) Ask from the Developers and Users of Risk Assessment Instruments**<br>University of New Mexico |
| October 2022 | **An Overview of the MMPI-3 Public Safety Candidate Interpretive Report**<br>Pearson Assessments |
| September 2022 | **Overview – Fetal Alcohol Spectrum Disorder and the Law**<br>Palo Alto University |
| August 2022 | **Fitness for Duty and Return to Work**<br>Palo Alto University |
| August 2022 | **Towards Strength-Based Forensic Assessment: Utilizing Protective Factors with Violent Risk Assessment and Management**<br>University of New Mexico |
| August 2022 | **Chemical Castration**<br>University of New Mexico |
| August 2022 | **Don't Let the "TR" Fool You: The DSM-5-TR is More That a Text Revision**<br>Florida Psychological Association |

| | |
|---|---|
| **August 2022** | **Analysis of Motive**<br>University of New Mexico |
| **August 2022** | **Advanced Topics in Child Forensic Interview Cases**<br>University of New Mexico |
| **August 2022** | **Developmental Pathways to Antisocial Behavior in Children and Adolescents: Implications for Theory, Diagnosis, Treatment, and Policy**<br>University of New Mexico |
| **June 2022** | **Advanced MMPI-3 Validity Scale Interpretation**<br>Pearson Assessments |
| **June 2022** | **The Basics of Conducting Conditional Release Evaluations**<br>University of New Mexico |
| **June 2022** | **Advanced Threat Assessment and Management**<br>Palo Alto University |
| **June 2022** | **Performance Crimes and Social Media: New Tools for Seeking Fame and Impact**<br>University of New Mexico |
| **June 2022** | **Involuntary Commitment in the United States: Effectiveness and Ethical Guidelines**<br>University of New Mexico |
| **June 2022** | **The Reid Technique of Investigative Interviewing and Positive Persuasion**<br>John E. Reid and Associates, Inc. |
| **June 2022** | **How to Enhance Your Adaptive Behavior Evaluations**<br>Western Psychological Services |
| **May 2022** | **Challenges in Assessing Civil Capacities**<br>University of New Mexico |
| **May 2022** | **Suggestibility and Trauma in Psycholegal Settings**<br>Concept/Palo Alto University |
| **April 2022** | **Contemporary Competency to Proceed Metrics Reported (and not reported) by U.S. Judiciaries**<br>University of New Mexico |

| | |
|---|---|
| **April 2022** | **A Moral-Situational Action Model for Violent Extremism**<br>University of New Mexico |
| **April 2022** | **The Autistic Experience Across the Lifespan: Considerations for Improved Clinical Practice**<br>Western Psychological Services |
| **April 2022** | **Diagnosing Antisocial Personality Disorder: The Important (but Sometimes Overlooked) Roles of Persistence, Pervasiveness, and Psychopathy**<br>University of New Mexico |
| **March 2022** | **An Empirical Perspective on Forensic Tele-practice: How Far Have We Come and What's Next?**<br>University of New Mexico |
| **March 2022** | **Get Off My Lawn – I Don't Want to Learn a New Way to Write Forensic Reports**<br>University of New Mexico |
| **March 2022** | **Intersectionality of Race and Intimate Partner Violence**<br>Florida Psychological Evaluation |
| **March 2022** | **Suicide Risk Assessment: Common Medical Errors**<br>Florida Psychological Evaluation |
| **March 2022** | **Competency Restoration Evaluations and Reports: Approach, Content, and Communication after an Initial Finding of Incompetency**<br>University of New Mexico |
| **March 2022** | **Psychopathy in Life and Media**<br>Florida Psychological Evaluation |
| **February 2022** | **Law, Science, and Children's Legal Rights: An Evolving Landscape**<br>University of New Mexico |
| **February 2022** | **Can We Find Our Way Out of the Competency to Stand Trial Impasse?**<br>University of New Mexico |
| **February 2022** | **Overvalued Idea or Bona Fide Delusion: The Conceptualization and Assessment of Gang-stalking Belief**<br>University of New Mexico |

| February 2022 | **Settled Insanity: Substance Use Meets the Insanity Defense** <br> University of New Mexico |
|---|---|
| February 2022 | **Understanding, Evaluating, and Treating Disruptive Mood Dysregulation Disorder in Childhood** <br> Western Psychological Services |
| February 2022 | **Parenting Capacity Evaluation Challenges: The Need for a Risk Assessment Instrument and Cultural Sensitivity in the Identification of Risk and Risk Mitigation** <br> University of New Mexico |
| January 2022 | **Daubert Challenges and Expert Testimony in Child Custody Cases** <br> University of New Mexico |
| January 2022 | **Creating a Criminal Justice System That Prevents Violent Crime** <br> University of New Mexico |
| January 2022 | **Diversity-Related Quality Improvement for Psychological Pre-employment Screening of Police Officer Candidates** <br> University of New Mexico |
| December 2021 | **Proving and Defending Sexual Harassment Cases in the #Me Too ERA** <br> University of New Mexico |
| December 2021 | **The Importance of Racial Identity in Forensic Mental Health Assessment** <br> University of New Mexico |
| December 2021 | **Frontiers of Violence Risk Assessment** <br> Dr. Neil Hogan |
| November 2021 | **The Scientific Foundations of Examining Children's Reports of Wrongdoing** <br> University of New Mexico |
| November 2021 | **The Emerging Practice of Tele-Forensic Interviewing: Implications for Children's Testimony Cases** <br> University of New Mexico |
| November 2021 | **Adult Fire-setting: Emerging Best Practice in Assessment and Treatment** <br> University of New Mexico |

| October 2021 | **Current Collaborative Approaches in Youth Fire-setting Prevention, Assessment, and Intervention** <br> University of New Mexico |
|---|---|
| October 2021 | **Risk Assessment of Individuals with Child Pornography Offenses** <br> University of New Mexico |
| October 2021 | **Serving Deaf Clients: A Look at Language Access and Interpreter Services** <br> University of New Mexico |
| October 2021 | **Sex Tech Meets Intimate Relationships: The Future of Sex** <br> Florida Psychological Association |
| September 2021 | **Coping with Posttraumatic Stress Disorder** <br> Florida Psychological Evaluation |
| September 2021 | **How to Review Child Abuse Investigations: An Overview** <br> University of New Mexico |
| September 2021 | **Beyond Validity: The Quest for Justice in Violence Risk Assessment** <br> University of New Mexico |
| September 2021 | **A Brief History of the Criminalization of Mental Illness** <br> University of New Mexico |
| August 2021 | **Perceptual Punishment: Collateral Consequences of Criminal Records and Implications for Risk Assessment, Risk Communication, and Risk Management/Re-entry** <br> University of New Mexico |
| August 2021 | **Sexual Harassment: Towards a Comprehensive Model of Harm** <br> University of New Mexico |
| August 2021 | **The Three Critical Components of Sexual Harassment: The Harasser, the Target, and the Context** <br> University of New Mexico |
| July 2021 | **Trauma in Testing: Accounting for Trauma and Marginalization in Psychological Evaluations** <br> American Professional Association on the Abuse of Children |
| July 2021 | **Language and Child Interviewing: A Tribute to Anne Graffam Walker** <br> American Professional Association on the Abuse of Children |

| | |
|---|---|
| **July 2021** | **Child-Centered Forensic Interviewing Strategies: How to Help Children Tell What They Know**<br>American Professional Association on the Abuse of Children |
| **July 2021** | **Forensic Interviewing: Variations on the Single Interview Model**<br>American Professional Association on the Abuse of Children |
| **July 2021** | **Differentiating Delusional Disorder from the Radicalization of Extreme Beliefs**<br>University of New Mexico |
| **June 2021** | **Traumatic Brain Injury, The Criminal Trial Process, and the Case of Lisa Montgomery**<br>University of New Mexico |
| **June 2021** | **Developmentally Appropriate Investigative Interviews**<br>University of New Mexico |
| **May 2021** | **MMPI-A-RF: Overview**<br>Pearson Assessments |
| **May 2021** | **Evaluation of Juvenile Competency**<br>University of New Mexico |
| **May 2021** | **Trauma-Informed Custody Cases**<br>University of New Mexico |
| **May 2021** | **Enhancing Your Adaptive Behavior Evaluations**<br>Western Psychological Services |
| **May 2021** | **The Truth About Race, Trauma, and Child Maltreatment**<br>American Professional Association on the Abuse of Children |
| **April 2021** | **Sexual Abuse, Physical Abuse, Bullying, and Internet Abuse**<br>American Professional Association on the Abuse of Children |
| **April 2021** | **Use of the MMPI-3 in Forensic Settings**<br>Pearson Assessments |
| **April 2021** | **Differential Diagnosis in Correctional Settings**<br>Psychologists in Public Service – Division 18 American Psychological Association |
| **April 2021** | **An MMPI-3 Overview for Forensic Psychologists**<br>University of New Mexico |

| April 2021 | **APSAC Child Forensic Interview Clinic**<br>American Professional Society on the Abuse of Children |
|---|---|
| April 2021 | **An MMPI-3 Overview**<br>Pearson Assessments |
| April 2021 | **Insanity Defense Typologies**<br>University of New Mexico |
| March 2021 | **Incorporating the MMPI-3 in Malingering Determinations**<br>Concept Professional Training |
| March 2021 | **Forensic Evaluations in Legal Proceedings: Best Practices**<br>University of New Mexico |
| March 2021 | **Psychopathy Evidence in Legal Proceedings: Examining the Probative Value and Prejudicial Impact**<br>University of New Mexico |
| March 2021 | **How Did Grandpa Become a Sex Offender? Neuropsychological Considerations When Working with an Aging Population**<br>Florida Association for the Treatment of Sexual Abusers |
| March 2021 | **Autism and Those Who Commit Sex Offenses: Identifying and Understanding Autism Spectrum Disorders**<br>Florida Association for the Treatment of Sexual Abusers |
| March 2021 | **Assessing Dynamic Risk and Protective Factors in Person with Intellectual Disabilities Who Have Sexually Offended: Armidilo-S**<br>Florida Association for the Treatment of Sexual Abusers |
| March 2021 | **Adolescents Who Engage in Sexually Abusive Behaviors**<br>Florida Association for the Treatment of Sexual Abusers |
| March 2021 | **Conduct Disorder: Advancing our Understanding by the Use of Specifiers?**<br>University of New Mexico |
| March 2021 | **Eyewitness Misidentification and Wrongful Convictions: An Overview**<br>University of New Mexico |
| February 2021 | **Validity of Memory for Traumatic Events: What do we Know?**<br>University of New Mexico |

| | | |
|---|---|---|
| **February 2021** | **Effective Expert Testimony**<br>University of New Mexico | |
| **February 2021** | **Forensic Evaluations in the Age of Social Media**<br>University of New Mexico | |
| **January 2021** | **Self-Directed Violence Risk Assessment and Management**<br>University of New Mexico | |
| **January 2021** | **Feigned Mental Disorders: Empirically Informed Forensic Practice**<br>University of New Mexico | |
| **January 2021** | **Breaking the Cycle: First Responders, Trauma, and Substance Abuse**<br>Florida Psychological Association | |
| **January 2021** | **Understanding the Relevance of Fetal Alcohol Spectrum Disorder in Criminal Justice and Forensic Settings**<br>University of New Mexico | |
| **January 2021** | **Developmental Issues in Juvenile Forensic Assessment Evaluations**<br>University of New Mexico | |
| **January 2021** | **Pretrial Risk Assessment in the Context of Bail Reform**<br>University of New Mexico | |
| **January 2021** | **The "Ultimate Issue" Issue**<br>University of New Mexico | |
| **December 2020** | **Violent Women in Forensic Psychiatry – Are Gender-Specific Approaches to Risk Assessment Necessary?**<br>University of New Mexico | |
| **December 2020** | **Providing Forensic Supervision**<br>University of New Mexico | |
| **December 2020** | **An Integrative Model of Conducting MSO Evaluations**<br>University of New Mexico | |
| **December 2020** | **Common Errors (and What to Do About Them) in Forensic Evaluations**<br>University of New Mexico | |
| **December 2020** | **Neuropsychological Considerations in Forensic Practice**<br>University of New Mexico | |

| November 2020 | **Truths and Falsehoods in Memory**<br>University of New Mexico |
|---|---|
| November 2020 | **Suggestibility, Compliance, and Autism-Spectrum Disorder in Clinical and Forensic Settings**<br>Concept Professional Training |
| November 2020 | **MMPI-3: Police Candidate Interpretive Report**<br>Pearson Assessments |
| November 2020 | **Forensic Misuse of "Sex Addiction" Diagnosis and Treatment**<br>University of New Mexico |
| November 2020 | **Appearance Anxiety in the Fitness Community**<br>Florida Psychological Association |
| November 2020 | **Interviewing the Child Who is Recanting Sexual Abuse**<br>American Professional Society on the Abuse of Children |
| November 2020 | **Ethical Challenges in Forensic Practice**<br>University of New Mexico |
| October 2020 | **Competency to Proceed, Plea Guilty, and Waive Counsel**<br>American Association of Forensic Psychology |
| October 2020 | **How Reliable and Objective are Forensic Mental Health Evaluations?**<br>University of New Mexico |
| October 2020 | **The Nature and Applications of Clinical Hypnosis**<br>Florida Psychological Association |
| October 2020 | **Administering the WAIS-IV, WASI-II, and WISC-V Remotely**<br>Pearson Assessments |
| October 2020 | **A Matter of Life and Death: Evaluations for Capital Sentencing**<br>University of New Mexico |
| October 2020 | **Oxycontin with a Whiskey Chaser: Substance Use Disorders in Older Adult Populations**<br>Florida Psychological Association |
| October 2020 | **Putting the Strength and Limitations of Children's Testimony in Context**<br>University of New Mexico |

| | |
|---|---|
| **October 2020** | **Preparing for Remote Assessment**<br>Pearson Assessments |
| **October 2020** | **Kahler v. Kansas: Implications for the Insanity Defense**<br>Florida Psychological Association |
| **September 2020** | **Resolution or Resignation: The Role of Forensic Mental Health Professionals Amidst the Competency Services Crisis**<br>University of New Mexico |
| **September 2020** | **Evaluating Youths Facing Long-term Sentences in Adult Court**<br>American Academy of Forensic Psychology |
| **September 2020** | **Evaluating Risk in Child Pornography Offenders**<br>American Academy of Forensic Psychology |
| **September 2020** | **MMPI-3 for Forensic Psychologists**<br>American Academy of Forensic Psychology |
| **September 2020** | **Preventing Interviewer Drift: Advanced Interview Mapping (AIM) for Forensic Interviews**<br>American Professional Society on the Abuse of Children |
| **September 2020** | **Interviewing the Reluctant Child**<br>American Professional Society on the Abuse of Children |
| **September 2020** | **Minimizing Miscommunication in Child Forensic Interviews**<br>American Professional Society on the Abuse of Children |
| **September 2020** | **Forensic Interviewing Children in the Shadow of Domestic Violence within a Coordinated Team Response**<br>American Professional Society on the Abuse of Children |
| **September 2020** | **Forensic Interview Protocols: An Update on the Major Forensic Interview Strategies**<br>American Professional Society on the Abuse of Children |
| **September 2020** | **Conducting Forensic Evaluations with Videoconferencing Technology**<br>American Academy of Forensic Psychology |
| **September 2020** | **Conducting Forensic Evaluations with Sexual and Gender Minority Clients**<br>University of New Mexico |
| **September 2020** | **The Paraphilias: Unconventional Sexual Interests and Acts**<br>Massachusetts Association for the Treatment of Sexual Abusers |

| September 2020 | **Evaluation of Competence to Stand Trial: Case Law, Cultural Considerations, and Practical Issues**<br>University of New Mexico |
|---|---|
| September 2020 | **Evaluating Juveniles Who Engage in Illegal Sexual Behavior: Bridging the Gap**<br>Southern Arizona Psychological Association |
| September 2020 | **Mental Health Disparities with Black America**<br>Southern Arizona Psychological Association |
| September 2020 | **Using Psychology to Reduce Police Misconduct**<br>Southern Arizona Psychological Association |
| September 2020 | **Foundations of Bias in Forensic Judgment**<br>Southern Arizona Psychological Association |
| September 2020 | **A Triad of Common Problems in Forensic Evaluations and Testimony: Reliability, Documentation, and Reasoning**<br>Southern Arizona Psychological Association |
| September 2020 | **Working with Persons who Sexually Offend: Assessing and Managing Risk Using Acute-2007**<br>Florida Association for the Treatment of Sexual Offenders |
| September 2020 | **Developing Informed Opinions about the Likelihood of Incompetent Defendants Attaining Competence to Stand Trial**<br>University of New Mexico |
| September 2020 | **The Repressed Role of Adverse Childhood Experiences in Adult Well-being Disease, and Social Functioning**<br>California ACES Academy |
| August 2020 | **Internet Sexual Predators and Covid-19**<br>Broward Crime Commission |
| August 2020 | **Anti-Racism in Forensic Psychology**<br>University of New Mexico |
| August 2020 | **Veterans in the Criminal Justice System**<br>University of New Mexico |
| August 2020 | **The Role of the Forensic Psychologist in a Criminal Courtroom: Perspectives from a Federal Judge**<br>University of New Mexico |

| **August 2020** | **Millon Adolescent Clinical Inventory – II: Assessing Externalizing and Internalizing Patterns**<br>Pearson Assessments |
|---|---|
| **July 2020** | **Pitfalls in Intellectual Assessments in Forensic Evaluations**<br>University of New Mexico |
| **July 2020** | **Ethical and Practical Challenges in Providing Psychological Opinions Regarding Personal Injury to the Court**<br>University of New Mexico |
| **July 2020** | **Identification and Evaluation of Autism**<br>Florida Psychological Evaluation |
| **July 2020** | **Improving Clinical Judgment and Decision-Making in Forensic Evaluations**<br>University of New Mexico |
| **July 2020** | **A MMPI-3 Overview**<br>Pearson Assessments |
| **July 2020** | **Race-based Implicit Bias and Micro-aggressions**<br>Palm Beach County Youth Services |
| **July 2020** | **Forensic Assessment of Immigrants**<br>University of New Mexico |
| **June 2020** | **Telepsychology – Fundamentals and Forensics**<br>University of New Mexico |
| **June 2020** | **Assessment and Treatment of Abuse-Supportive Sexual Interests**<br>Association for the Treatment of Sexual Abusers |
| **June 2020** | **Pain Psychology**<br>Florida Psychological Association |
| **June 2020** | **Risk Assessment and Management of Group-Based Violence**<br>University of New Mexico |
| **June 2020** | **Developmental Perspectives on Young Offender Evaluations**<br>University of New Mexico |
| **June 2020** | **Child Custody Evaluations**<br>University of New Mexico |
| **May 2020** | **Suggestibility in Children: Clinical and Forensic Considerations**<br>Concept Professional Training |

| | |
|---|---|
| **May 2020** | **Asylum Evaluations** <br> University of New Mexico |
| **May 2020** | **Psychopathic Personality Disorder: Clinical – Forensic Issues** <br> University of New Mexico |
| **May 2020** | **Trauma-Focused Cognitive-Behavioral Therapy for Children in Foster Care** <br> The Vincent J. Fontana Center |
| **May 2020** | **Boundary Issues in Forensic Practice** <br> University of New Mexico |
| **May 2020** | **Ethical and Effective Expert Witness Testimony** <br> American Academy of Forensic Psychology |
| **May 2020** | **Assessing Allegations of Trauma in Forensic Contexts** <br> American Academy of Forensic Psychology |
| **April 2020** | **Mental Disorder and Violence Risk** <br> Palo Alto University |
| **April 2020** | **What Psychologists Need to Know About Antidepressant Medication** <br> Florida Psychological Association |
| **March 2020** | **Florida Ethics and Law: Update** <br> Florida Psychological Association |
| **September 2006** | **Truth, lies, and False Memories** <br> National Association of Criminal Defense Lawyers |

## LEGAL SEMINARS ATTENDED

| | |
|---|---|
| **May 2022** | **Sexually Violent Predator (Jimmy Ryce) Evaluations** <br> Florida Prosecuting Attorney's Association |
| **February 2022** | **Challenging Eyewitness Evidence in Criminal Cases** <br> Palm Beach Association of Criminal Defense Lawyers |
| **June 2021** | **An Overview of Post-Conviction Law** <br> Broward/Palm Beach Association of Criminal Defense Lawyers |
| **November 2020** | **Mitigation Preparation for Clients Accused of Sexual Offenses** <br> Broward Association of Criminal Defense Lawyers <br> Webinar |

| August 2020 | **The Florida Marchman Act**<br>Recovery Unplugged<br>Webinar |
|---|---|
| July 2018 | **Basic Criminal Trial Practice: Jury Selection**<br>Broward Association of Criminal Defense Lawyers<br>Fort Lauderdale, Florida |
| March 2018 | **Brady and Giglio: Who Were Those Guys Anyway?**<br>Palm Beach Association of Criminal Defense Lawyers<br>West Palm Beach, Florida |
| March 2018 | **Killer Cross Examinations**<br>Palm Beach Association of Criminal Defense Lawyers<br>West Palm Beach, Florida |
| March 2018 | **Cultural Competencies**<br>Broward County Bar Association<br>Fort Lauderdale, Florida |
| January 2018 | **The Promises and Problems of Modern Psychopharmacology**<br>Palm Beach Association of Criminal Defense Lawyers<br>West Palm Beach, Florida |
| August 2016 | **Issues of Race in Jury Selection, Voir Dire, and Closing Argument**<br>Palm Beach County Public Defender's Office<br>West Palm Beach, Florida |
| February 2016 | **Best Practices – Jury Selection: Law, Theory, and Method**<br>A View from the Bench: Superstars Mock Trial<br>Coral Gables, Florida |
| April 2015 | **Mental Health and the Law**<br>Palm Beach Association of Criminal Defense Lawyers<br>West Palm Beach, Florida |
| March 2015 | **From Frye to Daubert**<br>Palm Beach Association of Criminal Defense Lawyers<br>West Palm Beach, Florida |
| October 2013 | **Eyewitness Memory**<br>Florida International University Psychology Department<br>Coconut Creek, Florida |

| May 2013 | **Ethical Issues and Professional Responsibility: Investigation, Preparation, and Prosecution of Domestic Violence Cases** Florida Prosecuting Attorneys Association Orlando, Florida |
| --- | --- |
| May 2013 | **Stalking** Florida Prosecuting Attorneys Association Orlando, Florida |
| May 2013 | **Approach Point Cross Examination: Practical Aspects and Witness Control** Florida Prosecuting Attorneys Association Orlando, Florida |
| February 2012 | **Confronting the Mob Mentality II: Challenging Charges of Sexual Assault** National Association of Criminal Defense Lawyers Fort Lauderdale, Florida |
| July 2003 | **Child Witnesses: Legal Dilemmas and Solutions** Institute for Behavioral Sciences and the Law Tampa, Florida |

## TELEVISION APPEARANCES

Today Show (NBC)
In Session (Tru TV)
CNN News
Erin Burnett Out Front (CNN)
Headline News Network (HLN)
Hardball with Chris Matthews (MSNBC)
Wicked Attractions (Investigation Discovery Network)
Evil Twins (Investigation Discovery Network)
Killer Kids (Investigation Discovery Network)
Forensic Files
O'Reilly Factor (Fox News)
Snapped (Oxygen Network)
CBS Channel 4 WFOR (South Florida)
ABC Channel 10 WPLG (South Florida)
CBS Channel 12 WPEC (West Palm Beach)

**EXHIBIT "C"**

INSTITUTE
for Behavioral Sciences
and the Law

**Office: (954) 766-8826**
**Fax: (954) 764-3486**

**11760 W. Sample Road, #103**
**Coral Springs, Florida 33065**

## Confidential Forensic Psychological Evaluation
### (Sex Offender Risk Assessment)

| | |
|---|---|
| **Examinee's Name:** | Selwyn Rosenstein |
| **Case #:** | 22-80107-CR-Cannon/Reinhart |
| **Date of Evaluation:** | 10-24-22 |
| **Date of Report:** | 10-26-22 |
| **Judge:** | Aileen Cannon |
| **Defense Attorney:** | Michael Salnick, Esquire |
| **Examiner:** | Michael P. Brannon, Psy.D. |

**Referral Information:** The examinee was evaluated at the request of his attorney, Mr. Michael Salnick, for a sex-offender risk assessment with risk reduction strategies, if clinically indicated. The examinee was evaluated on the above date at St. Lucie County Jail in Fort Pierce, Florida. He is charged with Engaging in a Child Exploitation Enterprise, Conspiracy to Advertise Child Pornography, Advertisement of Child Pornography, and Possession of Child Pornography. He has been incarcerated since 06-30-22. He is scheduled for his next court appearance on 12-09-22.

**Notification of Confidentiality Limitations:** The examinee was informed of the purpose of the current assessment and the limitations of its confidentiality and he agreed to participate in the evaluation. He was encouraged to be honest in his responses to examiner inquiries and when completing psychological testing.

**Sources of Information:**

> Clinical Interview
> Mental Status Examination
> Child Pornography Offender Risk Tool (C-PORT)
> Minnesota Multiphasic Personality Inventory – Third Edition (MMPI-3)
> Beck Depression Inventory – Second (BDI-II)
> Beck Anxiety Inventory (BAI)
> Beck Hopelessness Scale (BHS)
> Reliable Digit Span
> Indictment
> Plea Agreement
> Factual Proffer
> Penalty Sheet
> Telephone Interview with Ms. Marie Rosenstein (examinee's ex-wife)

**Relevant Historical Information:** Mr. Rosenstein reported that he is 69 years of age and that he was born in South Africa on 03-17-53. He related that he has resided in the United States for the past 42 years. He stated that he was raised by his mother and father along with two older sisters. He revealed a good relationship with all of his family members. He reported "possible" sexual abuse by his sister and by a "maid" during his childhood. He further related that he "got into trouble when I was age 5 because I put my hands down my mother's pants and felt her ass." He did not report any incidents of physical abuse or domestic violence during his formative years. He

described his childhood as "okay to happy." He was not aware of any family history of mental health problems. He reported a family history of drug/alcohol abuse (aunt, uncle).

Academically, the examinee reported that he completed high school and four years of college earning a Bachelor of Science degree. He stated that he earned average grades in mainstream classes in high school. He related that he was never retained in a grade. He reported occasional major behavioral problems in school. He did not reveal any problems in school due to inattentiveness or hyperactivity. He reported that he was the victim of bullying and excessive teasing by his peers throughout his school years.

The examinee reported that he was married and divorced on one occasion. He related that he cohabitated with his wife for approximately 10 years before they were married. He stated that he was living with his ex-wife in Boynton Beach, Florida at the time of his arrest. He did not report any incidents of domestic violence during his marriage. He stated that he does not have any children. He stated that he has never been homeless.

Occupationally, the examinee reported that he was self-employed in a computer support company at the time of his arrest. He related that he has been the owner of the above company since 1984. He stated that he was never fired from a job. He stated that he has never received Social Security disability benefits. He related that he received unemployment benefits on one occasion.

The examinee reported that he served in the South African Army for two years. He related that he was involved in combat activities for three months while in Angola during his military service. He reported that he observed several major injuries related to his combat activities. He did not report symptoms of posttraumatic stress related to his military service. He reported that his discharge status was Honorable with a rank of Private.

Legally, the examinee reported that he was never arrested before his current charges. He stated that he was never a member of a delinquent youth gang, militia group, or cult.

Socially, the examinee reported that he has several friends in the community. He reported that none of his friends have experienced legal problems. He reported that none of his friends abuse drugs or alcohol. Recreationally, the examinee reported that he enjoys reading and listening to podcasts.

Regarding his mental health history, the examinee reported that he has never received psychiatric or psychological treatment services. For example, he related that he has never been psychiatrically hospitalized, participated in outpatient counseling, or been prescribed psychotropic medication. He reported that he has never attempted suicide, although he entertained vague ideations of self-harm at the time of his arrest on the current charges. He did not report severe mood fluctuations. He did not report symptoms of depression and anxiety. He did not report auditory or visual hallucinations. He did not report any "special powers" or other possible delusional beliefs. The examinee did not report anger control problems. He did not report any symptoms of posttraumatic stress.

The examinee reported that he has used marijuana, cocaine, and alcohol. He stated that he has never abused prescription medication. He reported that he initially used marijuana when he was in his 20s, alcohol when he was 18 years of age, and cocaine when he was 35 years of age. He related that his last use of cocaine and marijuana occurred when he was 35 years of age. He reported that he was using alcohol "twice a week" at the time of his arrest. He related that he has never experienced any "problems" due to his use of marijuana, cocaine, or alcohol. He related that he has never experienced a "black-out" due to his use of drugs or alcohol. He identified his ex-wife as his primary source of emotional support in the community. He reported that he has never participated in substance rehabilitation treatment and that he has never attended a recovery group meeting. He reported that he has never engaged in problematic gambling behaviors.

Medical health was reported as remarkable due to high blood pressure, back pain, arthritis, and allergies. He stated that he suffered a head injury as a child in a bicycle accident. He did not reveal any current gross neurological symptoms.

**Mental Status Examination:** The examinee was appropriately groomed and attired in an orange jail uniform. He reported his height as 6'0" and his weight as 175 pounds. He displayed a trimmed beard and mustache. His general clinical presentation was cooperative and his demeanor was pleasant. He was able to state his name, date, and location. Motor responses were within normal limits with no apparent impairments. Eye contact was direct. His attention span was within normal limits as he was not easily distracted by extraneous stimuli. Memory functions were intact on brief measures of those cognitive skills. Responses to examiner inquiries were appropriate in volume, pacing, and word production. The examinee did not display any behaviors that were suggestive of the presence of imaginary internal stimuli (hallucinations). He did not verbalize any statements that were consistent with an active delusional belief system. Functional intelligence was grossly estimated in the Superior range based on his use of vocabulary and general fund of knowledge. He was not suggestible through attempts at mild persuasion by this examiner. He expressed his emotions in a full range and his mood was congruent with the content of the assessment. Judgment, problem-solving skills, and insight were good. He did not report suicidal or homicidal ideations or plans.

**Collateral Interview:** In a telephone interview with Ms. Anne Marie Rosenstein, she reported that she has known the examinee since 1974. She related that she was married to the examinee for "12 or 13 years." She stated that she divorced the examinee in 1990. She related that she was residing with the examinee at the time of his arrest on the current charges. She reported that the examinee has never displayed any behavior that would suggest that he was suffering from mental health problems. She was not aware of any drug or alcohol abuse by the examinee. She stated that that that the examinee has never displayed anger control problems and she has never observed him engage in acts of aggression toward others. She reported that the examinee has never displayed problems complying with established rules and regulations. She stated that the examinee has been self-employed as the owner of a computer company since the 1980s and she described him as a "workaholic." She reported that the examinee has numerous positive peer relationships in the community. She was not aware of the examinee experiencing any prior legal problems. Medically, she related that the examinee has high blood pressure, cardiac problems, back pain, and a head injury in a bicycle accident as a child. She was aware of the current charges against the examinee and she indicated that she was "very surprised" by those allegations. She reported that she has

never viewed any behavior by the examinee or heard any statements by him that would suggest that he was sexually attracted to juveniles. She was not aware of any complaints by neighbors, family, or friends regarding inappropriate sexual behavior or statements by the examinee. She expressed her belief that the examinee "must have been leading two separate lives." She indicated that she would remain emotionally supportive of the examinee throughout his current legal situation.

**Psychological Testing:** The Minnesota Multiphasic Personality Inventory – Third Edition (MMPI-3) is a frequently administered personality test in clinical and forensic settings. It has several Validity scales designed to assess for response distortion and numerous Clinical scales designed to assess for symptoms of a mental health disorder. Validity scales did not reveal any significant elevations. As a result, Clinical scales were determined to be valid and interpretable. Clinical scales revealed a significant elevation on Family Problems. There were no indications of mental health problems, antisocial behaviors, or substance abuse.

The Beck Depression Inventory – Second Edition (BDI-II) is one of the most commonly used brief assessment scales for symptoms of depression. The examinee obtained a total score on the BDI-II which falls in the Moderate range of depressive symptomatology. Individuals who score in the above range are reporting several symptoms of depression during the two weeks before and including the date of the test.

The Beck Anxiety Inventory (BAI) is one of the most commonly administered screening tools for anxiety. The examinee obtained a Total Score on the BAI that falls in the Low range for anxiety. Individuals who score in the above range are reporting few symptoms of anxiety during the 30 days before and including the test date.

The Beck Hopelessness Scales (BHS) is a frequently administered test designed to assess feelings of hopelessness. The examinee scored in the Low range on the BHS. Individuals who obtain the same score as the examinee are reporting few symptoms of Hopelessness during the seven days before the test administration.

Reliable Digit Span is an effort test requiring the examinee to repeat several digits forward and backward. Individuals who score below the cut-off score are often suspected of poor effort on cognitive tasks. The examinee scored above the established cut-off score on this test. As a result, the examinee's score was consistent with adequate effort on cognitive tasks.

**Current Allegations:** The Indictment alleges that the examinee was in possession of child pornography, and that he advertised those materials for others to access on the Internet on a site called "Website A." Additionally, he was reported to have assisted in the organization of that website and provided guidance to others regarding their contributions to that website.

**Examinee's Self-report:** The examinee was asked numerous questions regarding his actions on the dates of the instant offenses to assess his future risk potential. The examinee's responses to the above examiner inquiries were not included due to the pre-disposition status of his current legal case. This examiner is aware that the examinee has entered into a plea agreement with the government on the current charges.

**Psychosexual History:** The examinee reported that he was never involved in a sex education class when he was in school. He stated that he never spoke to either of his parents about sex during his childhood or adolescence. He reported that he initially looked at a magazine containing naked images when he was under 10 years of age. He reported that he occasionally spoke to his male friends about sex during his teenage years. He stated that he initially masturbated when he was 11 years of age. He did not reveal any problematic patterns regarding masturbation such as excessiveness or inappropriate locations. He reported that his first sexual contact with another person that did not include intercourse occurred when he was 12 years of age. He related that his first sexual contact with another person including sexual intercourse occurred when he was 14 years of age. He stated that he has been involved in sexual activities with approximately 15 women in his life. He reported that he was involved in multiple partner sex on several occasions. He identified his sexual orientation as exclusively heterosexual. He reported that he never forced or coerced another individual into sexual activities. He reported that he never used drugs or alcohol to facilitate sexual activities with a person that initially refused to engage in sex. He stated that he has visited a "strip club" on several occasions. He reported that he has never visited an adult book/video store. He stated that he exposed his genitalia to a non-consenting adult for sexual arousal (exhibitionism) on one occasion when he was 35 years of age. He indicated that he viewed a non-consenting adult undressing and having sex on several occasions when he was under the age of 10. He reported that he has never engaged in consensual sexual activities the involving physical pain or humiliation of himself or another person (sadomasochism). He related that he has never utilized the services of an escort or prostitute. He stated that he purposefully touched the genitals of another person and pretended that it was accidental (frotteurism) when he was "in my 30s." He reported that he has never dressed in women's clothing for sexual gratification (transvestitism). He did not report engaging in any sexual activities involving animals of another species (bestiality). He did not report any sexual activities involving feces or urine (coprophilia, urolagnia). He reported that he has never engaged in any consensual sexual activities that involved choking of himself or another person (erotic asphyxiation).

The examinee reported that he initially viewed adult pornography online when he was in his "30s." He reported that he has masturbated to adult pornography online on several occasions. He reported that his preferred categories of adult pornography have been "females masturbating," "lesbian," and "men and women having sex." He stated that he has never engaged in a conversation with a juvenile regarding sex online or in-person since he has been 18 years of age and older. He reported that he has spoken to other adults online several times regarding fantasized sexual activities with juveniles. He reported that he has not been employed in a job or volunteered for an activity that involved frequent contact with juveniles. He reported that he has experienced sexual attraction to prepubescent and pubescent children. He reported that he has masturbated to images/videos of prepubescent and pubescent children. He stated that he has never engaged or attempted to engage in sexual activities with an individual under the age of 18 since he has been 18 years of age. He stated that he has never taken a video or picture of a juvenile in the community for sexual purposes. He reported that there has never been a prior complaint regarding his sexual behavior or statements. He reported that he belonged to an online group that endorsed sexual behaviors between adults and juveniles at the time of his arrest. He reported that he currently experiences sexual performance problems in the form of erectile difficulties.

**Sex Offender Assessment Tool:** The Child Pornography Offender Risk Tool (C-PORT; Seto & Eke, 2015) is an actuarial measure designed to assess the risk for the probability of sexual re-offending of individuals convicted of a child pornography offense. The C-PORT allows for the comparison of individuals with a history of child pornography possession with and without a history of sexual contact offending. The C-PORT provides risk estimates for the likelihood of *any* future sexual offending (i.e., contact and/or pornography possession), as well as estimates for the likelihood of future child pornography possession. The C-PORT has been empirically cross-validated by Eke and colleagues (2019) with similar findings to the development sample.

The examinee's scores on the C-PORT are provided below. *To note, the following actuarial analysis is only valid if the current allegations are accurate as charged.*

| | | |
|---|---|---|
| 1. | Age | 0 |
| 2. | Criminal History | 0 |
| 3. | Failure on Conditional Release | 0 |
| 4. | Any Contact Sexual Offending | 0 |
| 5. | Pedophilic or Hebephilic Interests | 1 |
| 6. | More Boy Than Girl Child Pornography Material | 0 |
| 7. | More Boy Than Girl Content in the Nude/Other Child Material | 0 |

**Additional Factors for Consideration:** The examinee did not display any indications of antisocial or psychopathic personality traits during the clinical interview or on psychological testing. Research has consistently revealed that the presence of antisocial and psychopathic personality traits increases the probability of recidivism and reduces the prognosis of a successful treatment outcome.

The examinee did not report any recent use of drugs. He revealed the infrequent social use of alcohol. Research has consistently shown that the use of drugs and alcohol can increase impulsivity and poor judgment and therefore increase the probability of sexual offending for some identified individuals (prior sex offenses).

The examinee has good support from his ex-wife. The examinee's self-report was corroborated in a telephone interview with his ex-wife. Research has consistently displayed that individuals with good support sexually re-offend at lower rates.

**Conclusions:** Research has demonstrated that individuals similar to the examinee with the same C-PORT total (1) score are estimated to re-offend with *any* new sexual offense at a rate of 6% over five years. In other words, it is estimated that 6% of individuals with a history of child pornography offending and no contact sexual offenses will be convicted of a future sexual offense. Regarding child pornography recidivism, similar individuals with the same total score as the examinee are estimated to re-offend at a rate of 4% over 5 years. Additional research relied upon for this evaluation was conducted by Seto (2012), Goller and colleagues (2015), and the United States Sentencing Guidelines Commission (2012). This research has explored the recidivism rates for child pornography only (no prior sexual contact offense) offenders. The findings demonstrated that the recidivism rates for a contact sexual offense were between 0.2% - 8%, and recidivism rates for engaging in child pornography use were between 2% to 6%. In an abundance of caution, and

consistent with best practice guidelines established by the Association for the Treatment and Prevention of Sexual Abuse (ATSA), the examinee should be considered for a sex offender polygraph to assist in detecting any possible sexual contact offenses.

The examinee did not report any symptoms of a mental health disorder. Psychological testing did not reveal any significant elevations suggestive of a mental health disorder. Validity testing designed to assess for response distortion did not reveal any indications of malingering or poor effort. In a telephone interview with the examinee's ex-wife, she reported that the examinee has never displayed any behaviors or verbalized any statements that would suggest that he was sexually attracted to juveniles. Based on the information available at the time of this assessment, the examinee would be an appropriate candidate for participation in weekly sex offender rehabilitation group treatment at a program such as REACH in West Palm Beach, Florida. Research has consistently shown that individuals who attend and complete sex offender rehabilitation treatment accomplish modest yet significant reductions in future sexual reoffending. The examinee did not report or display any factors that would prevent him from benefiting from treatment services as outlined above.

Thank you for the opportunity to participate in this interesting case and please feel free to telephone me if you require further information on this matter.

**Michael P. Brannon, Psy.D.**
Licensed Psychologist
PY4289

EXHIBIT "D"

# Making Punishments Fit the Most Offensive Crimes

## Societal Revulsion at Child-Pornography Consumers Has Led to Stiff Prison Sentences -- and Caused Some Judges to Rebel

By Amir Efrati
Oct. 23, 2008 12:01 am ET

Are people who download and view child pornography -- but aren't themselves molesters -- as much of a threat to society as rapists or murderers?

The question, being raised by federal judges in response to tough sentences meted out to consumers of child pornography, goes to society's view of repugnant behavior and the legislative response to it.

The average federal prison sentence for individuals who possess, receive or share child pornography jumped to roughly seven years in fiscal 2006 from about three years in 1994, according to Justice Department data. In federal cases, the mandatory minimum for downloading images is five years in prison without parole. Defendants who download particularly lewd images, possess a large number of images or share some of them with others often get sentences of 15 or even 20 years.



### Crime and Punishment

The Justice Department has stepped up enforcement of child pornography laws, while Congress has passed tougher laws on those crimes in recent years, leading to more severe sentences for offenders.

Child pornography and other child exploit-ation cases brought by federal prosecutors, by fiscal year

Average prison sentence for convictions of possessing, receiving or distributing child pornography, in months

Source: Justice Department

In Arizona, the minimum mandatory sentence for one count of possessing child pornography is 10 years. Several years ago, a former teacher with no prior criminal record who was convicted on 20 counts of possession was sentenced to 200 years in prison.

These acts alone are disgusting to most people. But not everyone buys into the idea that they warrant two decades or more in prison. Federal judges around the country are speaking out against what they view as harsh mandatory and recommended sentences, spurred by Congress in recent years.

The sentencing guidelines for child pornography crimes "do not appear to be based on any sort of [science] and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses," wrote Robert W. Pratt, a U.S. district judge in Des Moines, Iowa, in a case earlier this year. In that case, he gave a seven-year sentence to one defendant, even though the advisory guidelines called for a minimum of roughly 18 years.

Some judges and other critics of the sentences say they stem from lawmakers' exaggerated reactions to societal alarm over very real problems. The crack-cocaine epidemic of the mid-1980s led Congress to pass much tougher sentencing laws for possession of crack, dwarfing the sentences for possession of the cocaine powder from which crack is derived, says Douglas Berman, a law professor at Ohio State University who writes an influential sentencing blog.



ILLUSTRATION: Jacob Morrill

Last year the Supreme Court said it was permissible for federal judges, who had complained for years about the disparity in sentences for the two types of cocaine, to give "reasonably" shorter prison terms for crack.

Similarly, the critics argue, concern over sex offenders is being stoked by television shows like "To Catch a Predator," which followed authorities as they captured individuals attempting to have sex with undercover agents posing as minors, whom they met online.

In possession cases where there is no evidence that defendants sought to abuse minors, several judges are giving much lower sentences than the guidelines intend, which they are allowed to do if they believe the recommended punishment doesn't fit the crime. They cannot go below a mandatory minimum.

In sentencing a defendant in July to five years in prison rather than the minimum recommended sentence of eight years, William Griesback, a federal judge in Green Bay, Wis., wrote: "The fact that a person was stimulated by digital depictions of child pornography does not mean that he has or will in the future seek to assault a child."

Some judges are making even more noise. In April, Jack Weinstein, a federal judge in Brooklyn, N.Y., threw out a conviction in a highly unusual manner. He made the argument that he himself had infringed on the defendant's constitutional rights by not informing the jury of the "harsh" five-year mandatory minimum sentence for receiving child pornography.

It is unclear whether most viewers of child pornography are likely to commit acts of physical abuse, some psychologists who treat sexual deviants say. Fred Berlin, founder of the Johns Hopkins Sexual Disorders Clinic, says many of his patients have a "voyeuristic" interest in child pornography. "Absent any evidence that they have done something other than view child porn, I'm not prepared to conclude they are at a heightened risk of physically abusing a child," he says.

But Ernie Allen, who heads the National Center for Missing and Exploited Children, argues the sentences are simply "catching up to reality." Hundreds of thousands of Americans currently possess illegal images and may be tempted to generate child pornography themselves -- by molesting children and taping the acts -- to gain acceptance in Internet groups whose members share images, he says.

The Justice Department, which launched an initiative in 2006, argues that this heightened acceptance is leading to "an escalation in the severity of the abuse depicted" and has made child pornography prosecutions a priority. Many such prosecutions in the U.S. now occur in federal court.

Advertisement - Scroll to Continue

In fiscal 2008, U.S. attorneys' offices brought 2,211 computer-based child exploitation cases, the vast majority against child pornography viewers, who mostly pleaded guilty. That was more than double the number five years earlier.

Drew Oosterbaan, chief of the Justice Department's child exploitation and obscenity section, says that even if they haven't committed child abuse, some individuals who view child pornography undoubtedly "pose a threat against children." Mr. Oosterbaan says the Internet has led to an explosion of new child pornography images and cites studies showing that viewing them may empower people to act on their sexual interest in children. There is no consensus on how many of the viewers will pursue physical abuse, Mr. Oosterbaan says, but "if your daughter's camp counselor is using child porn, common sense dictates there is a threat to your daughter."

This perspective, of a potential for danger, troubles Troy Stabenow, a public defender in Jefferson City, Mo., whose critique of child pornography sentences has been cited by judges. "You shouldn't punish someone for something they haven't done -- it's not American," he says.

He compares the long child pornography sentences with those given to online predators who drive hundreds of miles to engage in sex with minors they met in online chat groups. The mandatory minimum federal sentence for those offenders is 10 years, while receiving child porn carries a five-year mandatory sentence.But under the guidelines set by the U.S. Sentencing Commission -- a federal agency tasked with turning legislation into rules that guide judges on sentencing -- child pornography viewers often accumulate penalties, known as "enhancements," that magnify recommended sentences for individuals who use a computer, have a large number of images or possess images of prepubescent children, among other things. As a result, the recommended sentences for viewers can easily be higher than those for predators.

In 1990, Congress criminalized the possession of child pornography, and later passed legislation to significantly increase penalties for these offenses. In 1991, a person with no criminal history who possessed violent child pornography images and movies and shared them with others would face a maximum of two years in prison in federal cases. Today, that same person could face more than 20 years, Mr. Stabenow notes.

"Imprisonment of at least five years for this defendant *is* cruel," wrote Judge Weinstein, the Brooklyn judge who argued he had infringed on the defendant's rights himself, in his April opinion. "Few jurors or others would send a psychologically stunted man who: had suffered vicious sexual abuse as a child ... had established a home and family with a loving wife and children ... to prison for five years because he repaired to a locked room in his garage to watch child pornography received on his computer."

The Justice Department is appealing the judge's decision.

**Write to** Amir Efrati at amir.efrati@wsj.com